# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

**CV-18-69-GF-BMM**

MONTANA WILDLIFE
FEDERATION; THE WILDERNESS
SOCIETY; NATIONAL AUDUBON
SOCIETY; NATIONAL WILDLIFE
FEDERATION; and MONTANA
AUDUBON,

**ORDER**

Plaintiffs,

vs.

RYAN ZINKE, in his official capacity
as Secretary if the Interior; DONATO
JUDICE, in his official capacity as
Montana Bureau of Land Management
Deputy State Director; UNITED
STATES BUREAU OF LAND
MANAGEMENT; and UNITED
STATES DEPARTMENT OF THE
INTERIOR,

Defendants,

Federal Defendants, Defendant-Intervenor State of Wyoming ("Wyoming"),

and Defendant-Intervenor Western Energy Alliance ("Western Energy") seek to

sever and transfer a portion of this action to the location of the subject lands in the

federal district courts in Wyoming and Nevada. Federal Defendants have asked

this Court to sever the seven claims relating to leasing decisions in Wyoming and

Nevada. (Doc. 20 at 2). Federal Defendants do not request transfer of the four claims relating to leasing decisions in Montana. (*Id.*). The Court conducted a hearing on these motions on September 18, 2018.

## I. Background

The government amended ninety-eight federal land management plans for ten Western states in 2015. (Doc. 19 at ¶¶ 2, 42-43; Doc. 21 at 13). These resource management plan amendments ("2015 Plans") represented an effort to develop consistent "conservation measures for the protection of the greater-sage grouse and its habitat" range-wide. *See* 76 Fed. Reg. 77,008, 77,009 (Dec. 9, 2011). The 2015 Plans designated lands as Priority Habitat Management Areas and General Habitat Management Areas ("Habitat Areas"). (Doc. 40 at 10). Each plan directed BLM to prioritize oil and gas leasing outside these Habitat Areas to "limit future surface disturbance and encourage new development in areas that would not conflict with" the greater sage-grouse. (Doc. 19 at ¶ 47).

BLM issued Instruction Memorandum 2016-143 ("2016 IM") as guidance on how the "BLM would exercise the Secretary of the Interior's discretion with regard to leasing activities in order to fulfill the conservation commitments in the [2015] Plans" for the Habitat Areas.[1] The 2016 IM directed BLM to adhere to the

---

[1] BLM, Instruction Memorandum 2016-143, Implementation of Greater Sage-Grouse Resource Management Plan Revisions or Amendments—Oil and Gas Development Sequential Prioritization (Sept, 1, 2016), https://goo.gl/qhnCuv.

2015 Plans.  The 2015 Plans include a decision to "prioritize oil and gas leasing and development outside of identified [Habitat Areas]."  *Id.* at 3 (*citing* Rocky Mountain ROD at 1-25; Great Basin ROD at 1-23).

The 2016 IM directed BLM State Offices to follow a specific "prioritization sequence" for oil and gas leasing.  *Id.* at 3-5.  BLM's prioritization sequence instructed BLM to consider first leasing lands outside Habitat Areas and that "these lands should be first priority for leasing in any given lease sale."  *Id.* at 4.  General Habitat areas were to be considered next, and Priority Habitat areas were to be considered last.  *Id.*  The 2016 IM clearly directs BLM state offices to follow the 2015 Plans and protect the Habitat Areas known to house the greater sage-grouse.

President Trump issued Executive Order 13783, *Promoting Energy Dependence and Economic Growth*, in 2017.  (Doc. 40 at ¶ 50).  Secretary of the Interior Ryan Zinke ("Secretary Zinke") echoed President Trump's energy directive and issued Secretarial Order No. 3353 ("Zinke Memo").  (*Id.* at ¶ 51).  The Zinke Memo directs federal and state agencies to identify provisions in the 2015 Plans and associated policies that "may require modification or recession . . . in order to give appropriate weight to the value of energy and other development of public lands . . . and to be consistent with . . . American Energy Independence."[2]

---

[2] Office of the Secretary of the Interior, Secretarial Order 3353 at 5 (Aug. 4, 2017), https://goo.gl/EG5saz.

The Zinke Memo further directed BLM, the Fish and Wildlife Service, and the U.S. Geological Survey to provide a report with recommendations. *Id.*

BLM's Washington D.C. Headquarters issued its report.[3] The report identifies opportunities to clarify BLM's management under the 2015 Plans. The listed opportunities include, among other things, taking "advantage of flexibility in the 2015 [Plans] to support energy, mineral, and other development," and "allow[ing] adjustments to habitat boundaries . . ." *Id.* at 2. BLM suggests rescinding "the National IM and develop . . . specific IMs that include all habitat types . . . open for leasing" as a short-term option for lease prioritization. *Id.* at Appx. A at 2. The BLM further recommended to "clarify to BLM staff that the plans currently allow leasing in all Greater Sage-Grouse habitat categories." *Id.*

BLM replaced the 2016 IM with Instruction Memorandum 2018-026 ("2018 IM").[4] The 2018 IM removed the prioritization sequence contained in the 2016 IM. The 2018 IM specifically states that "the BLM does not need to lease and develop outside [Habitat Areas] before considering any leasing and development within [Habitat Areas]." *Id.* at 1.

The claims before the Court hinge on this unambiguous change of policy and its impact on conservation efforts for the greater sage-grouse habitats.

---

[3] BLM, Report in Response to Secretarial Order 3353 (Aug. 4, 2017), https://goo.gl/gLc5U9.
[4] BLM, Instruction Memorandum 2018-026, Implementation of Greater Sage Grouse Resource Management Plan Revisions or Amendments—Oil & Gas Leasing and Development Prioritization Objective (Dec. 27, 2017), https://www.blm/gov/policy/im-2018-026.

Plaintiffs allege that Defendants Secretary Zinke, Donato Judice in his official capacity as Montana Bureau of Land Management State Deputy Director, and the BLM unlawfully disregarded previously understood, well-settled protections for sage-grouse populations. Plaintiffs allege that BLM's 2018 IM stands in direct conflict with the 2015 Plans. (Doc. 19 at ¶¶ 87-91). The 2018 IM allegedly paved the way for eleven "final" BLM oil and gas lease sales (four in Montana, four in Wyoming, and three in Nevada) that collectively impact protected sage-grouse habitats region-wide. (Doc. 19 at ¶¶ 62-85). Plaintiffs challenge these leasing decisions, the Zinke Memo, and the 2018 IM as violating the 2015 Plans, the Federal Land Policy and Management Act ("FLPMA"), the National Environmental Policy Act ("NEPA"), and the Administrative Procedure Act. (Doc. 19 at ¶¶ 86-117).

## II. Discussion

Federal Defendants ask this Court to sever the out-of-state claims into two separate civil actions pursuant to Federal Rule of Civil Procedure 21. Federal Defendants allege that the out-of-state claims relate to separate administrative decisions made by local BLM offices in Wyoming and Nevada. (Doc 21 at 17-18). Federal Defendants seek to transfer these severed claims, pursuant to 28 U.S.C. § 1404, to the federal district courts in the states where BLM issued the leases. (Doc. 21 at 19-21). The relief sought effectively would displace the pending case

originally brought in the District of Montana, splinter it into three separate cases, to be resolved in three separate federal district courts. The Court first must decide whether Federal Defendants' motion warrants severance in order to transfer the out-of-state claims as Federal Defendants request.

## A. Severance of Claims

District courts possess broad discretion when evaluating whether to sever claims pursuant to Federal Rule of Civil Procedure 21. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1297 (9th Cir. 2000). Claims against different parties may be severed for trial or other proceedings if the court determines that the interests of justice would be better served by severance. *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 154 F. Supp.2d 10, 13 (D.D.C. 2001). Severance should be denied where plaintiffs' allegations allege a common series of transactions and occurrences that raise common questions of law and fact applicable to all defendants. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).

The district court in *Initiative & Referendum Inst*, 154 F. Supp.2d 10, denied a motion to sever eleven claims that related to issues outside the court's jurisdiction that plaintiffs had brought in the same complaint as claims within the court's jurisdiction. Plaintiffs challenged a USPS regulation that prohibited gathering signatures for petitions on postal properties as applied to twelve postal offices. *Id.* at 12. The defendants argued that severance would serve the interests

of justice as they contended that each claim related uniquely to each relative postal property. *Id.* at 13. The district court correctly acknowledged that "joinder rules are interpreted to encourage the broadest possible scope of action consistent with fairness to the parties" and that the "joinder of claims, parties and remedies is strongly encouraged." *Id.* (*citing Gibbs*, 383 U.S. at 724) (internal quotations omitted).

The district court determined that the eleven out-of-state claims could not be severed. Each allegation stemmed from a single USPS decision that banned signature gathering on postal properties. *Id.* The district court understood that severing the original case into multiple separate cases would produce both duplicative litigation and "waste vast amounts of judicial and litigant resources." *Id.* Severance proved improper as each allegation raised a common question of law attached to the single USPS decision. *Id.*

The district court similarly reasoned severance to be improper because each allegation required a common factual inquiry into each distinct property. *Id.* Severance would be improper on those circumstances as each allegation, though applied to twelve unique postal properties, arose from a single common event. *Id.* The interests of justice best would be served if the claims remained together to allow a single district court to solve all of the similar claims by determining the

validity of the single underlying USPS decision to ban signature gathering on postal property. *Id.*

Federal Defendants do not argue that Plaintiffs' claims improperly had been joined. Federal Defendants instead allege that this Court should sever the seven out-of-state claims because the claims relate to unique administrative decisions made by three separate BLM offices in each of the three states. (Doc. 21 at 17). Federal Defendants point to the fact that the challenged leasing decisions involve unique parcels of land. Federal Defendants further note that separate BLM offices outside Montana developed the administrative records that supported the challenged leasing decisions. (Doc. 21 at 18). Federal Defendants suggest that these variables, coupled with the administrative complexity, provide cause for these claims to be severed and decided in the localities where the leased lands lay. (Doc. 21 at 19).

This Court denied a similar motion to sever in *W. Org. of Res. Councils v. U.S. Bureau of Land Mgmt.*, 2017 WL 374705 (D. Mont. Jan. 25, 2017) ("*WORC*"). There BLM conducted environmental analyses in multiple Western states. *Id.* at *7. BLM reviewed and approved all of the analyses, however, in a single ROD issued from its Washington D.C. headquarters. *Id.* The plaintiffs challenged the BLM decision to approve the single ROD that affected multiple areas. *Id.* at *5.

The defendants similarly sought to sever the out-of-state claims on the grounds that the out-of-state claims affected uniquely the local interests of Wyoming. *Id.* This Court denied severance. The two environmental analyses in Montana and Wyoming arose from the single decision of BLM to approve the ROD that encompassed the analyses in Montana and Wyoming. *Id.*

This Court denies Federal Defendants' current motion to sever the seven out-of-state claims. Plaintiffs' claims compare to the claims in *USPS* and *WORC*. In those two cases, as here, Plaintiffs challenge a single action by a federal agency that presents common questions of law and fact. Plaintiffs allege that the lease sales at issue violate FLPMA because they follow the Zinke Memo and the 2018 IM. (Doc. 40 at 15). Plaintiffs do not challenge the individual leasing decisions. Plaintiffs instead bring a facial challenge to the Zinke Memo and the 2018 IM with separate as-applied challenges that involve the lease sales in three states. (Doc. 40 at 7).

Plaintiffs properly exercised their right to join "as many claims as it [had] against an opposing party." Fed. R. Civ. P. 18(a). Plaintiffs seek the broadest practicable scope of relief and challenge the legality of the new policy that supports each lease sale. Plaintiffs' challenge presents a strategic choice that will relieve the judicial system of multiple cases involving the same questions of law

and fact. Accordingly, this Court will deny Federal Defendants' motion to sever the seven out-of-state claims to ensure judicial economy.

## B. Transfer

"For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district court or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A transfer proves proper "to prevent the waste of time, energy and money and to protect litigations, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (quotations omitted). The party seeking transfer bears the burden of demonstrating that the transferee districts provide a more appropriate forum. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000). Courts possess broad discretion to transfer cases, but must consider the factors of convenience and fairness. *Id.* at 498.

A district court's consideration of a transfer pursuant to § 1404(a) involves two steps. A district court first must decide whether the action originally could have been brought in the proposed transferee districts. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). If the answer is yes, then the district court must make an individualized, case-specific, analysis of convenience and fairness to the parties and witness, and an assessment of the interests of justice. *See Jones*, 211

F.3d at 498-99.  This assessment incorporates multiple factors, including: (1) the convenience of the parties and witnesses; (2) familiarity of each forum with the applicable law; (3) the plaintiffs' choice of forum; (4) contacts of the different parties with the forum; (5) local interest in the controversy; (6) the ease of access to sources of proof and evidence; and (7) relative congestion in each forum.  *Id.*

    1.  <u>Step One: Where the Action Might Have Been Brought</u>

The Court first must evaluate whether this action might have been brought in the District of Wyoming or the District of Nevada.  *Hatch*, 758 F.2d at 414.  Venue proves proper in a civil action against an official or agency of the United States under any of the following circumstances: (1) when brought in a judicial district where a defendant in the action resides; (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) where the plaintiff resides if the action involves no real property.  28 U.S.C. § 1391(e)(1).

Federal Defendants claim that the transferee District of Wyoming and District of Nevada represent proper venues.  Federal Defendants first note that BLM operates offices in both of the other districts.  Federal Defendants next contend the decision-making processes occurred in the transferee districts.  And finally, the Federal Defendants argue the properties subject to those decisions sit in those transferee districts.  (Doc. 21 at 20).  This Court disagrees and adopts the

analysis in *W. Watersheds Project v. Zinke*, 2018 WL 4210774 (D. Idaho Sept. 4, 2018), from the United States District Court for the District of Idaho.

At the outset, it should be noted that the law remains unsettled whether "federal government defendants reside in *every* judicial district in which an agency has a regional office." *W. Watersheds Project*, 2018 WL 4210774, at *4; *see Tsi Akim Maidu of Taylorsville Rancheria v. United States Dep't of Interior*, 2017 WL 2289203, at *2 (N.D. Cal. 2017) (citing *Williams v. United States*, 2001 WL 1352885, at *1 (N.D. Cal. 2001). The Seventh Circuit in *Reuben H. Donnelly Corp. v. Federal Trade Comm'n*, 580 F.2d 264, 267 (7th Cir. 1978), explained that "to hold that a federal agency can be sued . . . wherever it maintains an office would, as a practical matter, render [§ 1391(e)'s other subsections] superfluous" as most federal agencies likely maintain offices in "most, if not all, judicial districts." *See California v. Bureau of Land Mgmt.*, 2018 WL 3439453, at *3 (N.D. Cal. 2018). The more prudent course for purposes of § 1391(e) leads to the conclusion that federal agency defendants reside in the District of Columbia where agency headquarters are located and where they make agency decisions. *See Zhang v. Chertoff*, 2008 WL 5271995, at *3 (N.D. Cal. 2008) (citing *Williams*, 2001 WL 1352885 at *1; *Reuben*, 580 F.2d at 267).

Venue with respect to a federal officer or employee remains proper in the place of their official residence—in other words, where they perform their official

duties. *See Reuben*, 580 F.2d at 266, n.3. Here, neither BLM itself nor any of the individual Federal Defendants reside in Wyoming or Nevada. The District of Montana represents a proper venue because two of the five Plaintiffs—Montana Wildlife Federation and Montana Audubon—are based in the District of Montana. (Doc. 40 at 22).

Next, §1391(e)(1)(B) directs that venue proves proper if (1) a "substantial part of the events . . . giving rise to the claim" took place in the proposed transferee districts, or (2) that a "substantial part of the property that is the subject of the action" sits in the proposed transferee districts. 28 U.S.C. §1391(e)(1)(B). The fact that the federal government leased oil or gas development rights to non-governmental entities inside state boundaries does not necessarily satisfy these criteria here. Plaintiffs do not challenge how a local BLM office handled a lease sale. Plaintiffs challenge, rather, the 2018 IM and the Zinke Memo that allowed the leasing decisions.

Plaintiffs contend that Federal Defendants violated federal law in issuing these oil and gas leases through reliance on the 2018 IM and the Zinke Memo by "disregarding established mandates for the way oil and gas lease sales are handled on public lands that affect sage-grouse habitat populations." *W. Watersheds Project*, 2018 WL 4210774, at *4. These claims belie characterization as a "generic challenge" to an agency action of the type proscribed by *Lujan v.*

*National Wildlife Fed'n*, 497 U.S. 871 (1990).  Plaintiffs' claims follow the legal and geographic contours of the challenged federal actions.  *W. Watersheds Project*, 2018 WL 4210774, at *5.  These legal and geographic contours follow "a very large pattern which is not random in nature."  *Id.*  This pattern traces the consequences of the alleged unlawful national directives in the form of local lease sales in Montana, Wyoming, and Nevada.  As a result, "the possible transfer of the action in whole or in pieces to some other federal court or courts stumbles at the gate."  *Id.*

2. Convenience, Fairness, and Interests of Justice

The Court still will examine the other factors that inform a possible change in venue.  A plaintiff's choice of forum is entitled to deference.  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  Federal Defendants must make a "strong showing" of inconvenience to warrant upsetting that choice.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Federal Defendants cite three factors in support of their argument for transfer: (1) the need to have localized controversies decided at home; (2) to promote consistency among court rulings; and (3) to relieve court congestion in the District of Montana.  (Doc. 21 at 21-29).

The Court assumes that state-specific interests arise in the discussion of oil and gas lease sales.  (Doc. 21 at 21-26).  The subject-matter of this lawsuit,

however, proves much more expansive than any as-applied challenge to a particular lease decision. Plaintiffs allege that the lease sales at issue share a common defect in the form of the violation of federal law stemming from revised national directives. Plaintiffs allege that these directives, in turn, result in cumulative impacts that threaten sage-grouse range-wide. (Doc. 40 at 23-29). Plaintiffs do not raise claims specific to any particular transferee district. *W. Watersheds Project*, 2018 WL 4210774, at *6. Likewise, nothing about the fact of the underlying lease sales and any corresponding local interest in these lease sales "raises a compelling argument in favor of transfer." *Id*. In short, the leases may be local, but the challenged national directives that allowed for the leases present less parochial concerns.

The district court in *W. Watersheds Project v. Salazar*, 2009 WL 1299626 (D. Idaho May 7, 2009), considered a similar situation involving federal agency actions related to sage-grouse management. The plaintiff alleged overarching NEPA and FLPMA violations that affected sage-grouse range-wide. *Id.* The district court explained that "the issues do not break down neatly into home judicial districts." *Id.* at *3. Whether BLM considered the cumulative impact of factors acting in a widespread area stretching beyond mere land boundaries represented the key issue. *Id.*

The district court explained that the plaintiff's allegations would "require a court to analyze effects beyond the borders of its judicial districts." *Id.* This requirement forced the district court to afford "less weight" to the traditional desire "to let disputes be resolved in their home court." *Id.* The district court recognized that the resolving court likely would be "considering cumulative impacts in other judicial districts." *Id.*

Plaintiffs' arguments guide this Court to the same conclusion. Plaintiffs make an as-applied challenge to the national directives implemented across many Western states. (Doc. 40 at 23). The issues presented may not break down neatly into home judicial districts. Like in *Salazar*, a key issue in this case involves the national directives' cumulative impact to the "habitats necessary to support greater sage-grouse populations [that] do not conform to state lines." (Doc. 40 at 25). This Court's analysis and single decision efficiently will encompass the cumulative impacts of the allegedly unlawful national directives to sage-grouse habitats beyond the borders of Montana.

Federal Defendants propose that breaking this case into multiple pieces and spreading it elsewhere would prevent inconsistent rulings. (Doc. 21 at 26-28). Plaintiffs challenge the legality of the national directives. Keeping this case in the District of Montana avoids the risk of inconsistent rulings rather than creating such a risk as Federal Defendants contend. As this Court already has acknowledged, a

16

case in the District of Idaho presents similar issues.  *W. Watersheds Project*, 2018 WL 4210774.  This fact also offers little reason to consider splitting this case up into even more possible conflicting judgements.

As a final point**,** "whether transfer would relieve congestion in the transferor district misses the point."  *Id.* at *7.  As the District of Idaho opined, "[a]ny relief to an already-pressed docket must be contrasted against the ability of the proposed transferee districts to consider and resolve the case more efficiently."  *Id.*  Nothing in the record indicates, and the supporting documents fail to show, "that the proposed transferee districts can guarantee such economies—especially when considering that severance, by its very nature, necessarily creates multiple overlapping cases instead of one."  *Id.*

In balancing these factors, the Federal Defendants failed to meet their burden to show that transferring this case in multiple parts to the proposed transferee districts would be proper.

## **ORDER**

Accordingly, IT IS ORDERED that Defendants' motion to sever (Doc. 20) the seven out-of-state claims is DENIED.  IT IS ORDERED that Defendants' motion to transfer (Doc. 20) the seven out-of-state claims is DENIED.

DATED this 6th day of November, 2018.

_____
Brian Morris
United States District Court Judge