JEAN E. WILLIAMS,
Deputy Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

JOHN S. MOST,
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
202-616-3353 || 202-305-0506 (fax)
John.Most@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| MONTANA WILDLIFE FEDERATION, *et al*. | CV 18-69-GF-BMM |
| Plaintiffs, | **FEDERAL DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO TRANSFER** |
| v. | |
| DAVID L. BERNHARDT, Acting Secretary of the Interior, *et al*. | |
| Federal Defendants, | |
| and | |
| STATE OF WYOMING, WESTERN ENERGY ALLIANCE, | |
| Intervenor-Defendants. | |

1

## MOTION

Pursuant to Fed. R. Civ. P. 59(e) and Local Rule 7.3(a), and in order to avoid "manifest error," *Turner v. Burlington Northen Santa Fe Railroad Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (quoting *McDowell v. Calderon,* 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (*en banc*) (*per curiam*)), Federal Defendants respectfully ask the Court to reconsider its November 6, 2018 Order.  ECF No. 62.  The Order denied Federal Defendants' motion seeking transfer of seven distinct claims – all concerning oil and gas lands in Wyoming and Nevada – to the Districts of Wyoming and Nevada.  ECF Nos. 20 (motion), 21 (supporting memorandum).

Federal Defendants ask the Court to reconsider the order in light of "newly discovered evidence."  *School Dist. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993), citing *All Hawaii Tours, Corp. v. Polynesian Cultural Ctr.*, 116 F.R.D. 645, 648 (D. Hawaii 1987), *rev'd on other grounds*, 855 F.2d 860 (9th Cir. 1988)).  That evidence contradicts a premise central to the Court's transfer ruling, specifically, that Plaintiffs present a single coherent challenge to the Bureau of Land Management's ("BLM") application of new policies to lease sales conducted across many Western states, *see* Order at 9, 13, 16 – policies referenced in the Order as the "Zinke Memo" and the "2018 IM" (hereafter "New Policies").

2

The Court relied on Plaintiffs' contention that all eleven leasing decisions challenged in this case (i.e., four in Montana, three in Nevada, and four in Wyoming) were based on the New Policies. However, recently uncovered record evidence – identified during preparation of administrative records and case management planning – shows this is not so. Most significantly, *none* of the Montana leasing decisions were based on the New Policies. Instead, they were either based on a 2016 policy from the previous administration (which Plaintiffs do not challenge) or, in the case of the Butte planning area, involved no designated sage-grouse habitat. Accordingly, there is no common thread running between the Montana leases and the leases pertaining to Wyoming and Nevada.

For the reasons set out below, the Court should reconsider its ruling and grant Defendants' motions to transfer the out-of-state claims.[1]

## SUPPORTING MEMORANDUM

## BACKGROUND

Plaintiffs challenge eleven oil and gas leasing decisions made by BLM officials in Montana, Wyoming, and Nevada, and they bring two facial challenges

---

[1] Although beyond the scope of this motion for reconsideration, it would nonetheless be appropriate for this Court to dismiss (or to direct Plaintiffs to show cause why it should not dismiss) the claims challenging BLM's application of the New Policies to the four Montana leasing decisions (i.e., portions of Counts Two, Four, Five, and Six). *See* Am. Compl., ECF No. 19, ¶¶ 86-117.

to Department of the Interior guidance documents: specifically, a 2018 instruction memorandum ("IM"), No. 2018-026, and the August 4, 2017 "Zinke memo" (collectively, the "New Policies"). Each of the policies concerns greater sage-grouse conservation in oil and gas decision making. In addition, Plaintiffs claim Federal Defendants acted arbitrarily in applying the 2016 guidance, IM 2016-143, as implemented by the previous administration. Am. Compl. ¶ 91.

As Federal Defendants explained in briefing on the motion to transfer, the leasing decisions were supported by eleven separate analyses under the National Environmental Policy Act ("NEPA") and eleven distinct administrative records. Any one of the eleven claims could stand alone as its own lawsuit, assuming jurisdictional requirements are satisfied. ECF No. 44 at 2. Noting that the out-of-state claims account for eighty-nine per cent of the total acreage at issue, a figure based on the amended complaint, Federal Defendants asked the Court to sever the claims and transfer them to the judicial districts where the lands and the most directly affected public are located: that is, Wyoming and Nevada. *Id*.

In opposing transfer, Plaintiffs described their lawsuit as one seeking to "set aside national policy directives issued by the Interior Department, as well as the implementation of those [policies] through oil and gas lease sales in three Western states (Montana, Nevada, and Wyoming) . . . ." ECF No. 40 at 1. Because each of Plaintiffs' claims was allegedly tethered to the New Policies, Plaintiffs urged the

Court to consider the similarities of their claims, arguing they are "closely intertwined and involve the same legal and factual issues." *Id*. They specifically asserted that all eleven decisions "implement the National Directives" – i.e., the New Policies – and, as a result, violate the Federal Land Policy and Management Act ("FLPMA"). *Id.* at 5.

Based in part on these characterizations, the Court on November 6, 2018, denied the transfer motion, concluding that Plaintiffs "do not challenge the individual leasing decisions." Order at 9. Instead, the Court explained, Plaintiffs "bring a facial challenge to the [New Policies] with separate as applied challenges that involve the lease sales in three states." *Id*. The Court also described the government's conduct as "a single action by a federal agency that presents common questions of law and fact." *Id*.

On December 21, 2018, Defendants moved for leave to seek reconsideration. ECF Nos. 67 (Federal Defendants), 68 (Intervenors). On January 15, 2019, the Court granted leave, then subsequently set a briefing schedule and authorized Plaintiffs' filing of a responsive brief. ECF Nos. 69, 80, 83.

## LEGAL STANDARD

A motion for reconsideration is appropriately brought under rule 59(e), which permits the court to reconsider and amend a previous order. Fed. R. Civ. P. 59(e), *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Under the rule,

5

reconsideration is appropriate "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. 1J, Multnomah Cty., Or.*, 5 F.3d at 1263.

Though it is a remedy to be used "sparingly" and may not be used to raise arguments for the first time, *Carroll*, 342 F.3d at 945, "the district court enjoys considerable discretion in granting or denying the motion." *McDowell*, 197 F.3d at 1255, n.1, quoting 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2810.1 (2d ed. 1995).

## ARGUMENT

The Court should grant the motion for reconsideration and issue an order transferring the out-of-state claims to Wyoming and Nevada based on "newly discovered evidence." *School Dist. 1J, Multnomah Cty., Or.*, 5 F.3d at 1263. In making the four Montana leasing decisions, the BLM Montana State Office did not apply the New Policies. Instead, where designated sage-grouse habitat existed, the Montana State Office instead applied Instruction Memorandum 2016-143 ("2016 IM") – a policy from the previous administration – which Plaintiffs do not challenge here. Indeed, even the Wyoming and Nevada State Offices applied the 2016 IM for several of the seven leasing decisions in those states, contrary to the allegations of the amended complaint. For instance, according to agency counsel,

who reviewed the underlying records and communicated their findings to the undersigned, BLM Wyoming relied on the 2016 IM for purposes of its December 2017 lease sale, and it considered that IM, *in conjunction with* the 2018 IM, for its March 2018 and June 2018 lease sales, while BLM Nevada relied on the 2016 IM for its December 2017 and March 2018 lease sales. This clarification discredits any view of the case as a unified challenge to the New Policies and negates the rationale for retaining out-of-state claims in Montana.

In fact, Plaintiffs' claims assail the legal adequacy of eleven distinct leasing decisions on various NEPA and FLPMA grounds. Each decision was made in the state where the relevant land and the most interested public is located, each pertains to geographically distinct lands, and each is supported by its own NEPA proceedings and a unique administrative record.[2] Because there is no common thread running through the eleven challenged leases, and no single action presenting common questions of law and fact, *see* Order at 9, this Court should reconsider its prior Order and grant Defendants' motions to transfer.

---

[2] These facts distinguish this case from one relied on by the Court in denying transfer, that is, *Western Organization of Resource Councils v. U.S. Bureau of Land Management*, No. CV 16-21-GF-BMM, 2017 WL 374705 (D. Mont. Jan. 25, 2017), where the government's transfer motion was denied, in part, because plaintiffs challenged *a single BLM decision*, not multiple decisions, as here.

## I. The Montana Leasing Decisions were not Based on the National Directives.

Record evidence makes clear that the four Montana leasing decisions were not based on the New Policies. The environmental assessments ("EAs") supporting the leasing decisions for the Miles City parcels (offered for sale at the December 2017 lease sale) and for the Billings and HiLine parcels (offered for sale at the March 2018 lease sale) all indicate BLM applied the 2016 IM in its habitat prioritizations. This was the policy implemented under the previous administration and later superseded by the New Policies. *See* AR BLM-MT-MC-002482 (Miles City), BLM-MT-BI-000025 (Billings), BLM-MT-HI-000165 (HiLine). The EA supporting the fourth Montana leasing decision (i.e., for the Butte parcels offered at the March 2018 lease sale), does not refer to habitat prioritization because the decision involved a planning area without designated sage-grouse habitat. *See* BLM-MT-BU-000153.

Because none of the Montana leasing decisions were based on the New Policies, the Court should reconsider its order denying transfer.

## II. Venue for the Wyoming and Nevada claims is proper in Wyoming and Nevada.

Venue principles pose no impediment to transfer. In denying the transfer motion, this Court held that only Montana or Washington, D.C. could be proper venues, because Plaintiffs reside in Montana and because the challenged agency

decisions, i.e., the New Policies, were made in Washington, D.C. *See* Order at 12 (concluding "federal agency defendants reside in the District of Columbia where agency headquarters are located and where they make agency decisions"); *id*. at 13 (adding that "neither BLM itself nor any of the individual Federal Defendants reside in Wyoming or Nevada"). The record does not support these conclusions, nor does it support the conclusion that Plaintiffs do not challenge "how a local BLM office handled a lease sale." *Id*.

To the contrary, record evidence demonstrate that the four Wyoming leasing decisions all relate to Wyoming resources and were all authorized by officials in BLM's Wyoming State Office in Cheyenne, Wyoming. *See* Exs. 1 (Dec. 2017 Wyoming Decision Record ("DR") - Pinedale), 2 (Mar. 2018 Wyoming DR - Wind River, Bighorn Basin), 3 (Mar. 2018 Wyoming DR – High Plains), 4 (Jun. 2018 Wyoming DR – High Desert) (all four Wyoming exhibits will included in the forthcoming administrative records)**.** Thus the claims directed at those decisions in fact challenge actions of the "local BLM office." *Id*.[3] The same is true as to the Nevada leasing decisions. All three relate to Nevada land and resources and all three were authorized by officials in BLM's Nevada State Office in Reno, Nevada.

---

[3] In fact, under BLM regulations and associated guidance, oil and gas leasing decisions under the Mineral Leasing Act must occur at the BLM State Office level. 43 C.F.R. 3120.1-2(a); BLM Manual MS-3120.64(D); BLM National Manual MS-1203, Subject Code 3100 Rel. No. 1-1179 (Oct. 27, 2016).

*See* Exs. 5 (Dec. 2017 Nevada DR - Ely), 6 (Mar. 2018 Nevada DR - Ely), 7 (Jun. 2018 Nevada DR – Battle Mountain) (all three Nevada exhibits will included in the forthcoming administrative records)**.**

On these facts, BLM clearly does reside in Wyoming and Nevada. *See California v. Bureau of Land Mgmt.*, Nos. 18-CV-00521-HSG, 18-cv-00524-HSG, 2018 WL 3439453, at *3 (N.D. Cal. July 17, 2018) (finding that venue is proper in Wyoming because BLM "has an office in that state, *and manages substantial federal land there*" (emphasis added)); *accord California v. U.S. BLM*, No. 17-cv-03804, 2017 U.S. Dist. LEXIS 218901, at *9-10, (N.D. Cal. Sept. 7, 2017) (BLM "maintains offices and manages land in both California and Wyoming, so venue is proper in both jurisdictions."). Even this Court has heard cases brought by out-of-state plaintiffs challenging federal land management decisions made in Montana. *See, e.g., WildEarth Guardians v. U.S. Fish & Wildlife Serv.*, 342 F. Supp. 3d 1047, 1051 (D. Mont. 2018), appeal docketed, No. 18-36091 (9th Cir. Dec. 28, 2018); *Cloud Found., Inc. v. Kempthorne*, No. CV-06-111-BLG-RFC, 2008 WL 2794741, at *3 (D. Mont. July 16, 2008).

Federal Defendants understand courts have questioned whether BLM resides in a state where the only event or transaction of any potential relevance was the presence of a BLM office. Here, however, BLM did more than simply occupy office space in Cheyenne and Reno. Officials in BLM's state offices made lawful

10

land management decisions involving resources within their respective jurisdictions and affecting citizens and business interests in their respective states. Venue is therefore proper under 28 U.S.C. § 1391(e)(1)(A).

Moreover, venue is proper for the additional reason that Wyoming and Nevada are districts "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(e)(1)(B). In this case, the events giving rise to the Wyoming and Nevada claims all occurred in Wyoming and Nevada, and the affected public lands are located there as well. Thus, both elements of section 1391(e)(1)(B) are satisfied, in addition to the elements of section 1391(e)(1)(A).

Finally, insofar as Plaintiffs contend – or insofar as this Court previously found – that the agency decisions at issue here actually took place in Washington, D.C., that conclusion was necessarily predicated on the incorrect notion that all eleven leasing decision claims are grounded in Plaintiffs' overriding challenge to the New Policies. As explained above, the New Policies were applied to only four of the out-of-state leasing decisions and none of the Montana leasing decisions. There is no basis, therefore, for construing Plaintiffs' complaint as narrowly challenging the issuance and application of the New Policies. The Complaint instead challenges eleven separate and discrete leasing decisions, each of which

could have been challenged in the first instance in the district where the corresponding BLM State Office is located.[4]

Although Plaintiffs' choice of forum is entitled to deference, the Ninth Circuit has made clear that such deference diminishes if "the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or subject matter[.]" *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). None of the operative facts relevant to the Wyoming and Nevada claims occurred in Montana and those claims bear no relation whatsoever to the District of Montana.

---

[4] *See* ECF No. 19 ¶ 96 (Count Two) (stating that "BLM's offering of leases in [all three states] violated FLPMA and was arbitrary . . . ."); *id*. ¶¶ 99, 100 (Count Three) (stating that the EAs supporting the lease sales "did not consider a range of reasonable alternatives" and therefore violated NEPA and were arbitrary); *id*. ¶¶ 104-106 (Count Four) (stating that "BLM's decisions to hold the lease sales violated NEPA and were arbitrary" for failing to consider "the direct and indirect impacts of those sales" and for failing to "analyze the direct and indirect impacts to greater sage-grouse from the 2018 IM and the Zinke Memorandum"); *id*. ¶¶ 109-111 (Count Five) (stating BLM failed to analyze and disclose "the cumulative impacts of offering hundreds of new oil and gas leases in key sage-grouse habitat" and therefore "BLM's decisions to hold the . . . lease sales in Montana, Nevada, and Wyoming violated NEPA and were arbitrary . . . ."); *id*. ¶¶ 117 (Count Six) ("BLM's failure to prepare an EIS for the eight lease sales, the 2018 IM, and the Zinke Memorandum, either individually or in combination, violated NEPA and was arbitrary").

For all these reasons, the Court should reconsider its decision that venue would not lie in Wyoming and Nevada.[5]

## CONCLUSION

Federal Defendants respectfully request that the Court grant the motion for reconsideration and issue an order transferring the out-of-state claims challenging leasing decisions to Wyoming and Nevada based on "newly discovered evidence."

Respectfully submitted this 5th day of March, 2019.

        JEAN E. WILLIAMS
        Deputy Assistant Attorney General
        U.S. Department of Justice
        Environment and Natural Resources Division

        /s/ John S. Most
        JOHN S. MOST, Trial Attorney
        Natural Resources Section
        P.O. Box 7611, Washington, D.C. 20044
        202-616-3353 || 202-305-0506 (fax)
        John.Most@usdoj.gov

        *Counsel for Federal Defendants*

Of Counsel

Philip C. Lowe
Office of the Regional Solicitor
Rocky Mountain Region

---

[5] Federal Defendants note that the Order can be read to reflect a conclusion by the Court that a facial challenge to the New Policies is permissible. Because this question is beyond the scope of a motion for reconsideration, Federal Defendants reserve the right to challenge that conclusion in further briefing.

United States Department of the Interior

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing is being filed with the Clerk of the Court using the CM/ECF system, thereby serving it on all parties of record on March 5, 2019.

/s/ *John S. Most*
JOHN S. MOST
*Counsel for Defendants*