# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

|  |  |
|---|---|
| **MONTANA WILDLIFE FEDERATION,** *et al.*, | **CV-18-69-GF-BMM** |
| Plaintiffs, | |
| vs. | **ORDER** |
| **DAVID BERNHARDT**, in his official capacity as Secretary of the Interior, *et al.*, | |
| Federal Defendants, | |
| and, | |
| **WESTERN ENERGY ALLIANCE**, *et al.*, | |
| Defendants-Intervenors | |

## INTRODUCTION

This Court entered an order vacating a number of oil and gas lease decisions and associated leases that took place in Montana along with an oil and gas lease decision and associated leases in Wyoming. (Doc. 147). The Federal Defendants, Western Energy Alliance ("WEA"), and State of Wyoming have all filed motions asking this Court to stay its vacatur of the Wyoming oil and gas lease decision and associated leases. (Docs. 164, 166, 171.) Federal Defendants ask the Court to stay

its vacatur pending appeal and "instead order a suspension of operations and productions with respect to the Wyoming leases pending the appeal." (Doc. 165 at 6.) Wyoming similarly requests that the "the portion of the Court's partial summary judgment order vacating the Wyoming leases be stayed and that the Court instead order that activities on the lease be suspended pending appeal." (Doc. 167 at 26.) WEA (collectively with Wyoming and Federal Defendants "Movants") asks the Court to stay the vacatur pending appeal, but opposes any suspension of operations and production on the leases pending appeal. (Docs. 172 at 2 and 175 at 2.) Plaintiffs "do[] not categorically oppose a stay pending appeal," but argues that the Court should deny these requests "without prejudice to their later renewal if Movants later file a proper appeal, or if the Ninth Circuit denies the Federation's motion to dismiss the pending appeals." (Doc. 174 at 24-25.)  The Court will grant the motions, stay the vacatur of the Wyoming leasing decision and associated leases, and suspend any operation or production related to those leases. The stay and suspension will remain in place pending appeal.

## ANALYSIS

### The Court will stay the lease vacatur and suspend any operation or production related to those leases pending appeal.

Courts have discretion when deciding whether stay of an order pending appeal. *See Nken v. Holder*, 556 U.S. 418, 433 (2009). The decision to grant a stay depends on "upon the circumstances of the particular case." *Id.* (quoting *Virginian*

2

*Ry. Co. v. United States*, 272 U.S. 658, 672–73 (1926)). Courts analyze the circumstances of a case under the following four-factor test: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434. The party seeking a stay bears the burden of proof. *See id.* The first two factors "are the most critical," and Courts only consider the last two factors "[o]nce an applicant satisfies the first two factors." *Id.* at 434-35.

Movants have satisfied the first prong of the stay analysis. The Supreme Court stated that a party asking for a stay must make a "strong showing" of likelihood of success on the merits, but Courts have offered varying formulations as to what constitutes a "strong showing." *See Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012). The Ninth Circuit has stated that a movant need not show that it is more likely than not to success on the merits, but must make "substantial case for relief on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam); *see Lair*, 697 F.3d at 1204.

Movants have indeed not shown that they are more likely than not to succeed on the merits, but nonetheless have made a substantial case for relief on the merits. The Court remains confident for all of the reasons stated in its summary

3

judgment order. That said, the Court recognizes that the issues raised in summary

judgment proved complex and hardly had an obvious outcome. BLM may not be

more likely than not to succeed, but the close questions raised on appeal mean

BLM inherently has a "substantial case for relief on the merits." *Leiva-Perez*, 640

F.3d at 966.

The Court writes nonetheless to clear up one particularly misleading

characterizations of the Court's Order that Movants have included in their briefing.

Federal Defendants maintain that the Order "suggested that deferral of parcels was

*the* appropriate mechanism to accomplish" the prioritization objective. (Doc. 165

at 15 (emphasis added); *id.*at 17 ("by interpreting the RMPA to require the deferral

of at least some parcels in sage grouse habitat in order to meet the prioritization

objective"; *id.* at 20 ("the Court's interpretation of the prioritization objective in

IM 2018-026 as requiring the deferral of at least some parcels in sage grouse

habitat").) The Court's Order does not require deferral of parcels. Rather, it points

to deferral of parcels as *an* appropriate mechanism to accomplish the prioritization

objective and one which BLM has previously used. Nothing in the Court's order

purports to say that the 2016 IM stood as the only reasonable interpretation of the

prioritization requirement, just that the 2018 IM was an unreasonable one.

Similarly, the Court's order in no way requires BLM "to withhold *all* parcels

in sage grouse habitat." (*Id.* at 24.) In stating that the "proper implementation of

4

the 2015 Plans' priority requirement means that BLM may not include parcels included in the lease sales," the Court was simply acknowledging that it had no way to determine what the lease sale would look like after BLM had remedied its errors as related to the prioritization objective. BLM may include some of the included in the lease sales; but BLM also may not include some of them. The Court has no way to determine one way or the other in the absence of a valid interpretation of the prioritization objective.

Movants also have satisfied the second factor of the stay analysis. Setting aside or cancelling leases would require the Federal Defendants to recover funds paid to Wyoming and the lessees. (Doc. 165 at 26-27.)  Wyoming claims it would be forced "to repay or withhold from its people and local governments $17.5 million,"  potentially affecting funding for public school children, and services provided to the elderly and disabled. (Doc. 167 at 18-20.)

The remaining two factors counsel in favor of staying the lease vacatur and suspending operations and production on the associated leases. Allowing any operation or production to move forward would substantially injure Plaintiffs' interest in the proceedings. Any drilling or potential production on the challenged lease sales could disturb and fragment sage grouse habitat. This potential disturbance constitutes irreparable harm. *See, e.g.*, *San Luis Valley Ecosystem Council v. U.S. Fish & Wildlife Serv.*, 657 F. Supp. 2d 1233, 1237, 1240 (D. Colo.

2009). Failing to maintain the sage grouse habitat would also go against the public interest. As things stand at the moment, maintaining the status quo by suspending production and operation on the Wyoming leases while staying the lease vacatur for the Wyoming leases strikes the proper balance between all the interests and harms present in this case.

## ORDER

Accordingly, **IT IS ORDERED** that:

- Federal Defendants motion to stay (Doc. 164) is **GRANTED**;

- The State of Wyoming's motion to stay (Doc. 166) is **GRANTED**;

- Western Energy Alliance's motion to stay (Doc. 171) is **GRANTED**, **IN PART**, and **DENIED**, **IN PART**. The order is denied to the extent it asks the Court to allow continued operations and production on the leases pending appeal.

Dated this 25th day of August, 2020.


Brian Morris, Chief District Judge
United States District Court

6