Timothy J. Preso, MT Bar No. 5255
Earthjustice
313 East Main Street
Bozeman, MT  59715
Phone: (406) 586-9699
Fax: (406) 586-9695
tpreso@earthjustice.org

Michael S. Freeman
(*admitted pro hac vice*)
Rumela Roy
(*admitted pro hac vice*)
Earthjustice
633 17th Street, Suite 1600
Denver, CO  80202
Phone: (303) 623-9466
Fax: (303) 623-8083
mfreeman@earthjustice.org
rroy@earthjustice.org

*Counsel for Plaintiffs Montana Wildlife Federation, The Wilderness Society, National Audubon Society, National Wildlife Federation, and Montana Audubon*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

|  |  |
|---|---|
| MONTANA WILDLIFE FEDERATION, et al., | ) ) ) | Case No. 4:18-cv-00069-BMM |
| Plaintiffs, | ) ) ) | **PLAINTIFFS' RESPONSE TO WESTERN ENERGY ALLIANCE'S MOTION TO STRIKE** |
| v. | ) ) ) |  |
| DAVID BERNHARDT, in his official capacity as Secretary of the Interior, et al., | ) ) ) ) |  |
| Defendants, | ) ) |  |
| WESTERN ENERGY ALLIANCE, et al., | ) ) ) |  |
| Defendant-Intervenors. | ) ) |  |

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

DISCUSSION .......................................................................................................2

I.     STANDING DECLARATIONS ARE NOT LIMITED TO THE
       ADMINISTRATIVE RECORD.......................................................................2

II.    DR. HOLLORAN's EXPERT DECLARATION IS RELEVANT TO
       ESTABLISHING INJURY-IN-FACT FOR STANDING..............................4

III.   THE COURT SHOULD DENY WEA's REQUEST TO STRIKE
       PASSAGES FROM OTHER STANDING DECLARATIONS ...................7

       A.     Declaration of Peter Arnold ................................................10

       B.     Declaration of Richard Guenzel ..........................................13

       C.     Declaration of Tina Toth......................................................15

       D.     Declaration of Richard Peterson ..........................................16

CONCLUSION....................................................................................................17

## INTRODUCTION

Defendant-Intervenor Western Energy Alliance's (WEA) motion to strike standing declarations filed by Plaintiffs Montana Wildlife Federation, et al. (collectively, the Federation) is both perplexing and meritless.  The motion is perplexing because WEA has not challenged the Federation's standing in this case. Nor has the Federation cited the standing declarations for any other purpose, such as to support its arguments on the merits.  It is thus unclear how WEA believes it is prejudiced by the declarations, or what WEA's goal is in seeking to strike the standing declarations while not contesting standing.

The motion also is meritless because standing declarations do not have to be part of the administrative record.  Moreover, WEA is wrong that it is irrelevant for Dr. Matthew Holloran's expert declaration to explain how drilling the Phase Two leases threaten greater sage-grouse: Dr. Holloran supports the testimony of Federation members that they will suffer an injury because development of the leases will impair their ability to view and enjoy the grouse.

Further, WEA's challenges based on the Federal Rules of Evidence fall short because they take statements from the standing declarations out of context and mischaracterize them.  Read as a whole, the declarations explain Federation members' concerns, based on their observations of oil and gas development elsewhere, that drilling on the Phase Two leases will harm the sage-grouse and

thus injure declarants' ability to watch and enjoy sage-grouse.  These statements are admissible to establish standing.

WEA's arguments also contradict each other.  In moving to strike passages from several standing declarations, WEA questions whether oil and gas development on the Phase Two leases will harm greater sage-grouse.  At the same time, WEA claims that Dr. Holloran's expert testimony explaining how the Phase Two leases will in fact threaten the sage-grouse is irrelevant.  WEA cannot have it both ways: if WEA plans to take the implausible position for standing purposes that sage-grouse will not be adversely affected by drilling, it cannot object to the Federation's submission of expert evidence establishing those adverse impacts.

WEA's motion should be denied.

## DISCUSSION

## I.    STANDING DECLARATIONS ARE NOT LIMITED TO THE ADMINISTRATIVE RECORD.

As an initial matter, WEA ignores controlling law when it claims the standing declarations are improper extra-record evidence.  ECF No. 225 (WEA Br.) at 2-3, 5-8.  The Federation is required to submit evidence to establish this Court's jurisdiction, and that evidence is not limited to the administrative record.

A plaintiff must have "standing" to bring a case in federal court because Article III of the U.S. Constitution limits the courts' jurisdiction to "[c]ases" and "[c]ontroversies."  Dep't of Com. v. N.Y., 139 S. Ct. 2551, 2565 (2019).  To

establish standing, plaintiffs must show (1) an "injury in fact," (2) caused by defendants' actions, and (3) the "likelihood that the requested relief will redress the alleged injury."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998) (citations and quotation marks omitted); see Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992).  The plaintiff "bears the burden of establishing" standing. Steel Co., 523 U.S. at 103; see Sierra Club v. U.S. EPA, 762 F.3d 971, 976 (9th Cir. 2014).

The evidence necessary to show injury to plaintiffs, as well as causation and redressability, often is not part of the agency's administrative record.  As a result, courts allow plaintiffs to submit declarations and other extra-record materials to establish their standing.  Nw. Envtl. Def. Ctr. v. Bonneville Power Admin., 117 F.3d 1520, 1527-28 (9th Cir. 1997); see also Sierra Club, 762 F.3d at 976 n.4; Gallatin Wildlife Ass'n v. U.S. Forest Serv., No. CV-15-27-BU-BMM, 2016 WL 6684197, at *1 (D. Mont. April 7, 2016).  This controlling law permits the Federation to submit the declarations challenged by WEA.

Moreover, WEA is wrong in asserting that the declarations are offered to support the merits of the Federation's claims, rather than standing.  The Federation attached the declarations to its summary judgment motion to demonstrate standing. ECF No. 197 at 2 n.1.  Because standing has not been disputed, the Federation's brief in support of summary judgment does not cite or refer to the declarations

WEA challenges.  <u>See</u> ECF No. 198.  For the same reason, the Federation's summary judgment reply also does not mention the standing declarations.  <u>See</u> ECF No. 229.  The Federation thus has not sought to use the declarations for any purpose other than establishing its standing.  The Court need only consider the declarations if standing is questioned, and not when resolving the merits of the Federation's claims.[1]

## II.   DR. HOLLORAN's EXPERT DECLARATION IS RELEVANT TO ESTABLISHING INJURY-IN-FACT FOR STANDING.

WEA also contends that Dr. Matthew Holloran's declaration is irrelevant to establishing standing because he is not identified as a member of any of the plaintiff organizations.  WEA is wrong.  Dr. Holloran's declaration is properly submitted to support the declarations of Federation members that describe the injury-in-fact they suffer from BLM's unlawful leasing of sage-grouse habitat.

Expert testimony can be used to establish the required elements for Article III standing.  <u>See, e.g.</u>, <u>Maya v. Centex Corp.</u>, 658 F.3d 1060, 1072-73 (9th Cir. 2011) (remanding case so plaintiffs can submit expert declarations proving

---

[1] Extra-record evidence may also be considered when choosing a remedy.  <u>See, e.g.</u>, ECF Nos. 211-1, 212-1, 220-3, 167-1 (declarations submitted by Defendant Bureau of Land Management (BLM), WEA, and Defendant-Intervenor State of Wyoming (Wyoming) on vacatur issue).  The Federation has not cited its declarations to support remedy because in summary judgment briefing, BLM, WEA and Wyoming to date have not seriously disputed that development of the Phase Two leases will adversely affect sage-grouse.

causation for purposes of standing); <u>Am. Canoe Ass'n v. Murphy Farms, Inc.</u>, 326 F.3d 505, 518-20 (4th Cir. 2003) (expert testimony in Clean Water Act case describing impact of pollutant discharges to water bodies used by plaintiffs' members for standing purposes); <u>Kravitz v. U.S. Dep't of Com.</u>, 366 F. Supp. 3d 681, 736-37 (D. Md. 2019) (expert testimony used to show injury-in-fact to plaintiffs from change in census procedure).

Dr. Holloran's declaration serves that purpose. Dr. Holloran is a research ecologist with extensive expertise in sage-grouse conservation, and particularly the impacts of energy development on the species. ECF No. 197-1 at 9 ¶1. His research, and sage-grouse conservation tools he helped develop, have been relied on by the Interior Department as well as states such as Montana and Nevada. <u>Id.</u> at 28. Dr. Holloran explains that development of the Phase Two leases will harm sage-grouse populations and that in the aggregate, BLM's surge of leasing under Instruction Memorandum 2018-026 threatens greater sage-grouse populations across a broad region including Nevada, Wyoming, Montana, and other states. He concludes:

> The scientific literature unequivocally supports the conclusion that development of the parcels in the five [Phase Two] lease sales could negatively impact greater sage-grouse populations presently and into the future within the priority habitats where the development occurs.

<u>Id.</u> at 16 ¶35. He also states:

> The scientific literature suggests that development of the leases associated with the five lease sales, particularly in combination with other leases being offered by BLM in Wyoming and Montana . . . pose a potential risk to regional greater sage-grouse populations across . . . an area extending from southern Nevada through Utah, northwestern Colorado and Wyoming into eastern Montana . . .

Id. at 9-10 ¶4.  This evidence is directly relevant to establishing injury-in-fact for standing.

Dr. Holloran's testimony supports the declarations of Federation members, and confirms the reasonableness of their fears that development of the Phase Two leases will impair their ability to watch, photograph, and hunt the sage-grouse on these lands.  His declaration is relevant and appropriate for establishing Article III standing.  See Am. Canoe Ass'n, 326 F.3d at 518-20 (expert testimony supported reasonableness of plaintiffs' concerns regarding pollution discharges to water bodies they used); Kravitz, 366 F. Supp. 3d at 736-37 (expert testimony demonstrated injury-in-fact).

Indeed, WEA's own motion illustrates the relevance of Dr. Holloran's declaration because WEA questions whether drilling on the Phase Two leases actually will harm sage-grouse populations, and thus injure the Federation's declarants.  Pp. 8-10, infra.  Dr. Holloran provides evidence rebutting WEA's position and explaining how development of the Phase Two leases threatens the

sage-grouse.  WEA cannot dispute those impacts while also claiming that Dr.

Holloran's testimony is irrelevant.  His declaration should not be stricken.

## III. THE COURT SHOULD DENY WEA's REQUEST TO STRIKE PASSAGES FROM OTHER STANDING DECLARATIONS.

The Court also should deny WEA's request to strike selected passages from

four other standing declarations submitted by the Federation.  WEA challenges

statements expressing concern that declarants' ability to enjoy sage-grouse on

lands covered by the Phase Two leases will be adversely affected by drilling.

WEA claims these passages involve "improper expert testimony" about subjects on

which the declarants lack personal knowledge.  WEA Br. at 7-8.  WEA's argument

is meritless.

Notably, WEA does not challenge the four Federation members' testimony

describing their use of lands that have been leased, and how they enjoy the lands in

their natural state for watching and photographing sage-grouse, along with many

other purposes that will be adversely affected by drilling, such as hiking, camping,

natural solitude, hunting, and star-gazing.  ECF No. 197-1 at 1-8, 32-43.  Instead,

WEA focuses on the declarants' expressions of concern that their ability to watch

and enjoy sage-grouse will suffer if the areas are drilled.

WEA argues that the declarants lack personal knowledge or expertise to

offer such a statement and claims it is "pure conjecture" that developing the leases

will harm sage-grouse.  WEA Br. at 9.  Tellingly, however, WEA quotes only

7

fragments of the passages that it seeks to strike.  A review of the full statements

shows that WEA is largely misquoting or taking them out of context.  The

Federation members' statements do not involve improper scientific or technical

opinions.  Instead, they express the "members' reasonable concerns about the

effects of" drilling on sage-grouse habitat, which would impair their enjoyment of

the leased areas.  See Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.,

528 U.S. 167, 183-84 (2000). This is entirely appropriate for standing declarations.

Id. at 183-85; see, e.g., Am. Canoe Ass'n, 326 F.3d at 518-20 (standing shown

through lay witness statements about impacts of pollutant discharges, and how they

"affected their aesthetic, recreational, and, in some cases, economic interests in the

waters," which were supported by expert testimony "demonstrat[ing] that these

fears were reasonable").

The statements challenged by WEA are offered in conjunction with Dr.

Holloran's expert declaration, and evidence in the administrative record, to

establish injury-in-fact caused by the Phase Two leases.  Dr. Holloran explains

how development of the leases may cause harm to sage-grouse, thus confirming

that the Federation members' fears are reasonable.  Moreover, the members'

concerns are supported by extensive administrative record evidence.  See ECF No.

101 at 4-5 (Interior Department experts describe oil and gas development as one of

the "primary threats" facing the sage-grouse, with impacts that are "universally negative and typically severe").

WEA appears to contest whether oil and gas drilling has adverse impacts to sage-grouse.  That dispute, however, should go to the weight given to the declarants' statements rather than their admissibility.  This Court can readily assess how much weight to give testimony challenged under Rule 702.  For that reason, the requirements of Rule 702 are "relaxed" where a jury is not involved.  See U.S. v. Flores, 901 F.3d 1150, 1165 (9th Cir. 2018).  The "'gatekeeper' doctrine [for expert testimony under Rule 702] was designed to protect juries and is largely irrelevant in the context of a bench trial."  Id. (quoting Deal v. Hamilton Cty. Bd. of Educ., 392 F.3d 840, 852 (6th Cir. 2004)); Sierra Club v. Talen Mont LLC, CV 13–32–BLG–DLC–JCL, 2016 WL 11200732, at **3, 9 (D. Mont. Mar. 25, 2016) (Rule 702 standards "relaxed" in bench trials).

This Court should consider the statements WEA challenges, and the weight to give them, in the context of the declarants' full declarations along with other evidence in the record.  For example, WEA asserts that no surface occupancy (NSO) stipulations on "many" of the Phase Two leases will prevent "oil and gas development . . . on the surface of these parcels," and thus avoid all impacts to the declarants.  WEA Br. at 9.  WEA's argument, however, is flawed.  The NSO stipulations on Wyoming leases are limited in scope (extending either 0.25 or 0.6

9

miles from an occupied lek), and do not cover the entire lease. <u>See</u> ECF No. 220-1 at 3-7 (list of stipulations filed by WEA). Dr. Holloran's declaration demonstrates why a 0.25 or 0.6-mile setback is wholly inadequate to avoid impacts to sage-grouse. <u>See</u> ECF No. 197-1 at 11 ¶13 (noting "studies consistently reporting impacts from infrastructure on the number of males occupying breeding grounds (known as leks) to approximately 2 miles, with lesser impacts consistently apparent to approximately 4 miles").

A review of the four declarations confirms that WEA's request to strike particular statements should be denied.

### A.    Declaration of Peter Arnold

Mr. Arnold is a National Audubon Society member who "travel[s] throughout Wyoming viewing and photographing birds," including sage-grouse. ECF No. 197-1 at 1-2. He has visited many of the lands leased in Phase Two for that purpose, as well as for hunting, and plans to continue doing so in the future. <u>Id.</u>

WEA moves to strike one sentence from paragraph 9 of Mr. Arnold's declaration, which states that sage-grouse and other birds would be harmed if drilling occurred on the Phase Two leases.[2] However, WEA takes that sentence

---

[2] WEA incorrectly states that the passage in question is the third sentence of paragraph 9. Judging from the language quoted by WEA, it seeks to strike the fourth sentence of that paragraph. <u>See</u> WEA Br. at 8; ECF No. 197-1 at 2 ¶9.

out of context.  The full text of paragraph 9 states as follows (the underlined

sentence is the one WEA seeks to strike):

> I own a second home in Pinedale, Wyoming, which is close to the Jonah Field. Jonah Field is a large natural gas field 32 miles south of Pinedale. I have recently toured parts of the Jonah Field and observed first hand the impact of development on wildlife, particularly the Greater Sage-grouse.  <u>If oil and gas development and drilling were to take place in the areas that were leased in the December 2017, March 2018, or June 2018 lease sales, there would be harm to a variety of birds found in sagebrush country – notably Greater Sage-grouse</u>. As such it would reduce my enjoyment of this delicate landscape and the biologically valuable species of wildlife that are found there.

ECF No. 197-1 at 2 ¶9.  As described above, the challenged sentence reflects an

expression of concern by Mr. Arnold about how development will impair his

enjoyment of the leased lands.  The reasonableness of that concern is demonstrated

by Dr. Holloran's declaration and BLM's own conclusions in the administrative

record, and it is appropriate for the Court to consider.  <u>Friends of the Earth</u>, 528

U.S. at 183-85; <u>Am. Canoe Ass'n</u>, 326 F.3d at 518-20.

Moreover, Mr. Arnold's sentence is admissible even if viewed as opinion

testimony.  Non-expert opinions are admissible where (a) "rationally based on the

witness's perception," (b) helpful to understand his testimony, and (c) not based on

scientific or technical knowledge within the scope of Rule 702.  Fed. R. Evid. 701.

The sentence challenged by WEA meets this test.

The immediately preceding sentence, which WEA ignores, shows that Mr.

Arnold's statement is based on his personal experience: he has seen the impacts of

oil and gas development in Wyoming's heavily-drilled Jonah Field on birds and other wildlife, and does not want the Phase Two areas he visits to suffer the same fate.  Mr. Arnold's statement is also helpful to understand his testimony because it explains part of why he believes development of the Phase Two leases will injure his interests.

Recognizing the disruptive impacts of industrial oil and gas development on wildlife also does not require "scientific, technical, or other specialized knowledge."  Fed. R. Evid. 701.  Anyone who has experienced the waste pits, traffic, heavy machinery, odors and noise associated with drilling can recognize that both animals and people prefer to avoid it.  Mr. Arnold's one-sentence statement is admissible.  See City of Sausalito v. O'Neill, 386 F.3d 1186, 1198-99 & n.1 (9th Cir. 2004) (considering standing declaration in which city manager opined that plan for using former military base would cause variety of adverse impacts that were also documented in administrative record, including "impaired air quality" and  rendering "shoreline . . . less attractive and ecologically healthy").

Mr. Arnold is not opining on biological details like sage-grouse life cycles, migration patterns or the scientific literature—he simply makes a passing observation that oil and gas development is harmful to wildlife.  Compare ECF No. 197-1 at 1-2 (Arnold declaration) with id. at 9-17 (Holloran declaration).  If WEA wishes to challenge that statement, the dispute should go to the weight given Mr.

Arnold's sentence rather than its admissibility.  See Flores, 901 F.3d at 1165;

Talen Mont., 2016 WL 11200732 at **3, 9.

### B.   Declaration of Richard Guenzel

WEA's request to strike part of Richard Guenzel's declaration fails for

similar reasons.  Mr. Guenzel is a retired wildlife biologist with the Wyoming

Game and Fish Department, as well as a National Audubon Society member.  Mr.

Guenzel also has worked in Wyoming for BLM, the Forest Service, and the U.S.

Fish & Wildlife Service.  ECF No. 197-1 at 7 ¶¶2-3.  His research has been cited

by BLM in NEPA documents analyzing the impacts from large oil and gas

projects.  Id. at 7 ¶4.

Mr. Guenzel has visited many of the Phase Two leases and other areas that

have experienced extensive oil and gas development in his professional capacity,

such as to conduct wildlife surveys, and for recreational enjoyment such as hiking,

hunting, photography and viewing wildlife.  He plans to continue visiting these

areas in the future.  Id. at 7-8 ¶4-6.

> WEA objects to paragraph 7 of Mr. Guenzel's declaration, where he states:
>
> If oil and gas development occurs on those [Phase Two] leases, there would be direct and indirect negative impacts to wildlife (notably Greater Sage-grouse), important wildlife habitat and recreational values associated with these public lands.  My personal enjoyment of wildlife, and the ability to share it with my son, is directly tied to maintaining the health and functionality of this area.

13

Id. at 8 ¶7.  WEA never explains what basis it has for moving to strike the second sentence of this paragraph (noting the connection between the health of the area and his ability to enjoy it), and that request therefore should be denied.  See WEA Br. at 8-9.

As for the first sentence, it reflects Mr. Guenzel's concern that drilling on the Phase Two leases will adversely affect his enjoyment of sage-grouse and other wildlife, as well as "recreational values" there.  This expression of concern—which is supported by Dr. Holloran's declaration and BLM's conclusions in the administrative record—is appropriate and admissible.  See pp. 5-10, supra.

Moreover, similar to Mr. Arnold, Mr. Guenzel's statement can also be considered as lay opinion under Rule 701.  His statement is based on years of experience as a professional biologist, and is helpful in understanding why he fears injury-in-fact from the Phase Two leases.[3]  And a brief statement recognizing that oil and gas drilling can disrupt wildlife and impair the land's "recreational values" for hiking and other purposes, does not require specialized or technical knowledge. Pp. 11-12, supra.  The Court can consider Mr. Guenzel's statement, and give it appropriate weight along with the extensive evidence elsewhere in the record showing that development of the leases threatens sage-grouse.  Pp. 8-10, supra.

---

[3] Given Mr. Guenzel's professional background, his statement can also be admitted as expert opinion under Rule 702.

14

### C.    Declaration of Tina Toth

WEA's request to strike paragraph 8 from Tina Toth's declaration also should be denied.  Ms. Toth is a National Audubon Society member who has visited the Phase Two lease areas for "hiking and exploring the area, experiencing the remoteness and diversity of birds and wildlife," and photographing sage-grouse and other birds.  ECF No. 197-1 at 3-5 ¶¶3-7.  She plans to visit the areas in the future.  Id.

WEA characterizes Ms. Toth as offering a scientific opinion "presum[ing]" that wildlife will suffer adverse impacts from drilling on the Phase Two leases. WEA Br. at 9.  But a review of Ms. Toth's declaration shows that is not what she is saying.  The passage WEA seeks to strike says:

> After having traveled personally through areas that have oil and gas development, I anticipate that the area's wildlife, including sage grouse, plovers and owls, will suffer if oil and gas development and related activities were to occur on these parcels.  I started bird watching following a diagnosis of Intracranial Hypertension in 2013 that resulted in placement of a shunt to relieve pressure on my brain. I go to places like these to decrease the stress in my life and I find peace here. If the further development of oil and gas on these lands continues, it will lead to less quality of life and enjoyment of these lands for me.

ECF No. 197-1 at 6 ¶8.  First, Ms. Toth's statement that she "anticipates" wildlife will suffer if drilling occurs on the Phase Two leases is not an opinion.  Rather, it explains her reasonable concern that she will suffer an injury-in-fact from that development.   Moreover, her statement that she will enjoy the lands less if they

are drilled is based on personal experience: she has visited other areas that have

faced oil and gas development. And contrary to WEA's suggestion, Ms. Toth does

not need a scientific or medical degree to state that hiking and bird-watching will

be less relaxing for her if the area becomes an oil and gas field. This paragraph

should be admitted for the same reasons as the other declarations. Pp. 7-14, <u>supra</u>.

### D.   Declaration of Richard Peterson

Mr. Peterson's 21-page, single-spaced declaration contains 61 paragraphs

describing his extensive visits to a number of leased areas in Nevada and his

enjoyment of them for wildlife viewing and a variety of other purposes. The one

paragraph WEA seeks to strike states:

> If the public lands adjacent to and over-lapping this outstanding area [the
> Sulfur Springs Range, where Phase Two leases were offered] are leased and
> drilled for oil and gas, all of the above uses of the land [e.g., hiking,
> photographing, rock-hunting, searching for sage-grouse and other wildlife,
> camping, stargazing, and enjoying natural solitude] would be compromised
> and would harm my enjoyment of . . . these natural lands. These proposed
> leases will impact the migration and life cycles of wildlife in this region,
> including sage grouse. It is the wildlife that substantially enhances my
> enjoyment and experience of this area. These proposed leases would also
> compromise my ability to derive future income . . . through writing, art, and
> documentation that is based on the natural condition and wonders associated
> with the Sulfur Springs Range and the adjacent valleys.

ECF No. 203 at ¶15.

As the text of paragraph 15 demonstrates, Mr. Peterson is not offering

improper expert opinion on wildlife "migration and life cycles" as WEA claims.

Read in context, Mr. Peterson is simply explaining his concern that he would face

16

a variety of harms from drilling on these leases, including but not limited to his ability to observe wildlife such as sage-grouse.  His statements, moreover, are based on personal experience: Mr. Peterson explained that he has witnessed the impacts of oil and gas and other fossil fuel extraction activities in sage-grouse habitat elsewhere in Nevada.  Id. at ¶6.  No scientific or technical knowledge is required to opine that industrial oil and gas development will injure his ability to enjoy the area in its natural state.   P. 12, supra.  The Court should deny WEA's request and give paragraph 15 appropriate weight in the context of all the evidence regarding standing.

## CONCLUSION

WEA's motion to strike should be DENIED.

Respectfully submitted this 19th day of January, 2021,

*/s/ Michael S. Freeman*
Michael S. Freeman
Rumela Roy
Earthjustice
633 17th Street
Suite 1600
Denver, CO 80202
Phone: (303) 623-9466
Fax: (303) 623-8083
mfreeman@earthjustice.org
rroy@earthjustice.org

*/s/ Timothy J. Preso*
Timothy J. Preso
Earthjustice
313 East Main Street
Bozeman, MT  59715
Phone: (406) 586-9699
Fax: (406) 586-9695
tpreso@earthjustice.org

*Counsel for Plaintiffs Montana Wildlife
Federation, The Wilderness Society,
National Audubon Society, National Wildlife
Federation, and Montana Audubon*

18

## CERTIFICATE OF COMPLIANCE

I certify with respect to the foregoing that:

(1) This document complies with the type-volume limitation of Local Rule 7.2(d)(2), because:

> [X] this document contains <u>3990</u> words.

(2) This document complies with the typeface and type style requirements of Local Rule 1.5(a) because:

> [X] this document has been prepared in a proportionally spaced typeface using Word 2016 in 14 point font size and Times Roman, or

> [ ] this document has been prepared in a monospaced typeface using <state name and version of word processing program> with <state number of characters per inch and name of type style>.

> *<u>/s/ Michael S. Freeman</u>*
> Michael S. Freeman

# CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of January 2021, I electronically

transmitted the attached **PLAINTIFFS' RESPONSE TO WESTERN ENERGY**

**ALLIANCE'S MOTION TO STRIKE** to the Clerk's Office using the CM/ECF

System for filing, thereby generating service upon the following parties of record:

| | |
|---|---|
| LUKE HAJEK<br>luke.hajek@usdoj.gov<br>*Attorney for Federal Defendants* | ERIK E. PETERSEN<br>ADRIAN ANN MILLER<br>MICHELLE M. SULLIVAN<br>erik.petersen@wyo.gov<br>adrian.miller@sullivanmiller.com<br>michelle.sullivan@sullivanmiller.com<br>*Attorneys for Defendant-Intervenor*<br>*State of Wyoming* |
| BRET A. SUMNER<br>MALINDA MORAIN<br>bsumner@bwenergylaw.com<br>mmorain@bwenergylaw.com<br>*Attorneys for Defendant-Intervenor*<br>*Western Energy Alliance* | ROB CAMERON<br>TIMOTHY C. FOX<br>MELISSA SCHLICHTING<br>rob.cameron@mt.gov<br>edoj@mt.gov<br>mschlichting@mt.gov<br>*Attorneys for Defendant-Intervenor*<br>*State of Montana* |

*/s/ Michael S. Freeman*
Michael S. Freeman