# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| MONTANA WILDLIFE FEDERATION, *et al.*, | **4:18-cv-69-GF-BMM** |
| Plaintiffs, | |
| vs. | **ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED AND SUPPLEMENTAL COMPLAINT (DOC. 232)** |
| U.S DEPARTMENT OF THE INTERIOR, *et al.* | |
| Defendants, | |
| and | |
| THE STATE OF WYOMING, *et al.*, | |
| Defendant-Intervenors. | |

## INTRODUCTION

Montana Wildlife Federation, The Wilderness Society, National Audubon Society, National Wildlife Federation, and Montana Audubon (collectively, "Plaintiffs") brought this action against a group of federal government agencies and officials in their official capacity (collectively, "Federal Defendants"). (Doc. 1). Plaintiffs allege that Federal Defendants issued unlawfully certain federal oil and gas lease policies that failed to prioritize the protection of sage grouse habitat.

(Doc. 19). Plaintiffs also challenged a series of oil and gas leases Federal Defendants sold pursuant to those policies. (Doc. 19). The Court separated the litigation into phases to streamline consideration of legal issues. (Doc. 97).

## BACKGROUND

In Phase I, Plaintiffs challenged a Memorandum issued by then-Secretary of the Interior Ryan Zinke ("Zinke Memo"), Instruction Memorandum 2018-026 ("2018 IM") issued by the Bureau of Land Management ("BLM"), and three sets of oil and gas lease sales in Montana and Wyoming. (Doc. 100). The Court issued its Phase I order on May 22, 2020. (Doc. 147). The Court invalidated the 2018 IM and vacated the lease sales in Montana and Wyoming because the policy and lease sales violated the Federal Land Policy and Management Act ("FLPMA"). (Doc. 147). The Court did not rule on Plaintiffs' National Environmental Policy Act ("NEPA") claims. (Doc. 147). The Court's Phase I Order is now on appeal at the Ninth Circuit. The Circuit held argument on May 6, 2021.

In Phase II, Plaintiffs allege that five additional oil and gas lease sales are invalid for the same reasons as the Phase I lease sales. (Doc. 198). Plaintiffs also allege that these lease sales suffer from identical NEPA claims to the Phase I lease sales. (Doc. 198). Plaintiffs, Federal Defendants, and Defendant-Intervenors have each filed their own dispositive motions related to Phase II. (Docs. 197, 207, 210,

217, 219). The Court held a hearing on Phase II motions on June 14, 2021. (Doc. 260). The Court will issue a ruling on those motions in due course.

Plaintiffs now seek leave to file a second amended and supplemental complaint. (Doc. 233). Plaintiffs move to supplement their complaint with six additional lease sales from 2019-2020 in Wyoming and Montana that they allege violate FLPMA and NEPA for identical reasons to the Phase I and Phase II leases. (Doc. 233 at 5). These additional lease sales occurred after Plaintiffs filed their First Amended Complaint, and some of these lease sales occurred after the Court's Phase I Order striking down the 2018 IM and three sets of lease sales as unlawful.

## ANALYSIS

Rule 15(d) "provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed." *Eid v. Alaska Airlines, Inc*., 621 F.3d 858, 874 (9th Cir. 2010); *see also* Fed. R. Civ. P. 15(d) (motions to supplement the complaint are permitted "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented"). Courts generally grant a motion to supplement "[u]nless undue prejudice to the opposing party will result." *LaSilvia v. United Dairymen of Ariz*., 804 F.2d 1113, 1119 (9th Cir. 1986). Courts liberally permit supplemental complaints to promote the complete adjudication of a dispute between the parties and to promote judicial economy. *See Keith v. Volpe*, 858 F.2d 467, 473–74 (9th

Cir. 1988) (granting leave to supplement is "favored" to "promote the economical and speedy disposition of the controversy").

The general rule provides plaintiffs with wide latitude to supplement their complaint as needed—but there remain limits to that permissive structure. Courts should grant a motion to supplement "[u]nless undue prejudice to the opposing party will result." *LaSilvia*, 804 F.2d at 1119 (citing *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973)). "While leave to permit supplemental pleading is 'favored,' it cannot be used to introduce a 'separate, distinct and new cause of action.'" *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402–03 (9th Cir. 1997) (quoting *Keith v. Volpe*, 858 F.2d at 473). Further, "[u]ndue delay is a valid reason for denying leave to amend." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991) (citation omitted); *see Komie v. Buehler Corp.*, 449 F.2d 644, 648 (9th Cir. 1971); *but see Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) ("Undue delay by itself, however, is insufficient to justify denying a motion to amend.").

Plaintiffs' motion remains timely because the Court's phased scheduling orders did not set a deadline for the Parties to amend or supplement their pleadings. (Docs. 97, 163, 205). The Court adopted these phased scheduling orders based upon agreement of the Parties. Further, Plaintiffs have not filed their motion following undue delay. The six new lease sales at issue in Plaintiffs' proposed

4

supplemental complaint had not yet occurred when Plaintiffs filed their First Supplemental Complaint. The six new lease sales constitute "facts that didn't exist when the original complaint was filed." *Eid*, 621 F.3d at 874. Plaintiffs reasonably sought to consolidate the addition of these six lease sales in a single motion rather than file a motion to supplement following each quarterly lease sale.

Federal Defendants and Defendant-Intervenors fail to show that Plaintiffs' proposed supplemental complaint would cause undue prejudice. Federal Defendants argue that supplementation would cause prejudice because Federal Defendants would be forced to defend a new set of leases and create a new administrative record. (Doc. 251 at 7–11). Defendant-Intervenors make similar arguments and add that supplantation would cause "contractual uncertainty" for leaseholders and may lead to new venue briefing. (Docs. 249 & 250). These arguments prove unavailing.

Courts center undue burden analysis on two considerations: the potential for disruption of previous proceedings, *see Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999); *LaSalvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir. 1986), and the inability of parties to present facts, evidence, or arguments caused by late supplementation, *In re Vitamins Antitrust Litig.*, 217 F.R.D. 30, 32 (D.D.C. 2003). The unique phased litigation in this case prevents undue burden. Supplementation would not disrupt the previous two

phases in any way. The need to defend a new set of leases would not constitute prejudice. *See Dep't of Fair Emp. & Hous. v. L. Sch. Admission Council, Inc.*, No. C-12-1830 EMC, 2013 WL 485830, at *5 (N.D. Cal. Feb. 6, 2013) ("The burden of having to defend a new claim alone is not undue prejudice under Rule 15."). The compilation of an administrative record, new summary judgment and venue briefing, as well as contractual uncertainty would exist no matter when supplementation occurred in the timeline of this case. The Parties will have an opportunity to defend any new leases from legal claims. Supplementation at this point would not cause prejudice.

Allowing supplementation finally would promote judicial economy. In *Ohio Valley*, a district court allowed supplementation where the plaintiffs alleged a "continuing pattern and practice" by the defendant federal agency of issuing mining permits in violation of the Clean Water Act. *Ohio Valley Env. Coal. v. U.S. Army Corps of Engineers*, 243 F.R.D. 253, 256–57 (S.D. W.Va. 2007). In granting leave to file two supplemental complaints challenging four new permits, the district court explained: "[T]he Court has already spent months poring over the applicable environmental laws and regulations whereas a different Court would have to start anew. . . . By granting leave, the Court will be able to avoid the cost and waste of separate actions because of its familiarity with the subject matter, thus serving the efficient administration of justice." *Id*. at 256–57. That reasoning

applies here. Plaintiffs allege that Federal Defendants continued to hold lease sales premised on the 2018 IM even after the Court declared unlawful previous lease sales premised on the same 2018 IM. Plaintiffs argue that these additional lease sales suffer from identical legal deficiencies to the Phase I and Phase II lease sales. Granting leave will promote judicial economy because the legal issues raised in the proposed Second Amended and Supplemental Complaint "mirror the original Complaint." *Id.* at 257.

## ORDER

For good cause shown, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to File a Second Amended and Supplemental Complaint (Doc. 232) is **GRANTED**.

DATED this 21st day of June, 2021.

Brian Morris, Chief District Judge
United States District Court

7