IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| **MONTANA WILDLIFE FEDERATION**, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> **DAVID BERNHARDT**, in his official capacity as Secretary of the Interior, *et al.*, <br><br> Defendants, <br><br> **WESTERN ENERGY ALLIANCE**, *et al.*, <br><br> Defendant-Intervenors. | CV-18-69-GF-BMM <br><br> **ORDER** |

## BACKGROUND

Plaintiffs challenge the Bureau of Land Management's ("BLM") issuance of the 2018 Instruction Memorandum on Greater Sage Grouse conservation ("2018 IM") and subsequent oil and gas leasing decisions. The Court explained the background of this case in depth in the Phase One summary judgment order. (Doc. 147 at 1-13.) The Court will assume familiarity with the prior decision and will summarize only the outcome of the Phase One order here.

The Court vacated the 2018 IM and three lease sales in Montana and Wyoming for violating FLPMA in the Phase One order. (*Id.* at 32.) The 2018 IM directed BLM staff to disregard BLM's 2015 Resource Management Plans' ("2015 Plans") prioritization requirements for fluid mineral leasing in Sage Grouse habitat. BLM-IM026-001071 (Instruction Memorandum 2018-026 (Dec. 27, 2017)). The 2018 IM stated that prioritization would apply only where a "backlog" of leasing requests exists. *Id.* The Court determined that the direction to apply leasing prioritization only where a backlog of leasing proposals exists violated the Federal Land Policy and Management Act ("FLPMA") because "[t]he 2015 Plans do not say that BLM will prioritize non-Sage Grouse habitat in *some* of its decisions. The backlog limitation provides for precisely that result." (*Id.* at 21 (emphasis added)).

The Court also determined that the 2018 IM unreasonably misconstrued the purpose of the 2015 Plans' prioritization requirement and rendered "the prioritization requirement into a mere procedural hurdle." (Doc. 147 at 23-24.) Such an interpretation conflicts with U.S. Fish and Wildlife Service's ("FWS") understanding of the requirement when it declined to list the Sage Grouse under the Endangered Species Act. (*Id.*) The 2018 IM asserted that "BLM does not need to lease and develop outside of [Sage Grouse] habitat management areas before considering any leasing and development within [Sage Grouse] habitat." BLM-IM026-001071 (Instruction Memorandum 2018-026 (Dec. 27, 2017)). The 2018 IM

2

thus ignored the goals of prioritization—to refrain from listing the Greater Sage Grouse under the Endangered Species Act—by failing to "further limit future surface disturbance and encourage new development in areas that would not conflict with" Sage Grouse habitat. WY072017.

The Court determined that the three lease sales at issue in Phase One also violated FLPMA for failing to properly implement the 2015 Plans' priority requirement. (Doc. 147 at 30-31.) The Court pointed to the Wyoming lease sale's direct reliance on the 2018 IM, and the BLM's statements in the Montana lease sales indicating that it did not apply the prioritization criteria. (*Id.* at 26-27.) The Court also stated that BLM's failure to apply the prioritization requirement violated FLPMA regardless of whether the agency purported to follow the 2016 IM or the 2018 IM. (*Id.* at 27.)

Phase Two consists of Plaintiffs' challenge to the five remaining lease sales listed in the first amended complaint: the December 2017, March 2018, and June 2018 Nevada lease sales, and the December 2017 and March 2018 Wyoming lease sales. (Doc. 19 at ¶¶ 68-82.) The Court heard argument on the Phase Two cross-motions for summary judgment and Federal Defendant's motion to remand on June 14, 2021. (Doc. 260.)

## LEGAL STANDARD

A court should grant summary judgment where the movant demonstrates that no genuine dispute exists "as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment remains appropriate for resolving a challenge to a federal agency's actions when review will be based primarily on the administrative record. *Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 778 (9th Cir. 2006).

## DISCUSSION

### I. The Phase Two Lease Sales Violated FLPMA.

Plaintiffs argue that the Phase Two lease sales conflict with the 2015 Plan's prioritization requirements for the same reasons as the Phase One sales: BLM relied on the 2018 IM or failed to properly implement the 2015 plans' priority requirements established to conserve Sage Grouse habitat. Defendants contend that the Phase Two lease sales differ from the Phase One lease sales because BLM complied with the 2015 plans' prioritization requirement for these sales; BLM followed the 2016 IM, rather than the 2018 IM, when conducting the lease sales; and BLM required that stipulations be placed on the leases to reduce impacts to Sage Grouse.

The Defendants' arguments prove unavailing. The Phase 2 lease sales suffer from similar infirmities to the Phase 1 lease sales for the reasons discussed below.

    **a.** **Lease stipulations cannot supplant the 2015 Plans' prioritization requirement.**

The Court begins by addressing Defendants' argument that placing stipulations on leases might fulfill the prioritization requirement of the 2015 Plans. This argument lacks merit. Stipulations and prioritization both represent tools to protect Sage Grouse, but provide distinct mechanisms for achieving this goal.

BLM places stipulations on a lease to constrain the rights of the purchaser. Stipulations restrict the type of use that can occur within the lease parcel. A no surface occupancy requirement within 0.6 miles of an identified lek provides an example of a lease stipulation used by the BLM. WY067952-53. Stipulations of this type deter the intensity of oil and gas disturbance to Sage Grouse within a leased area. The stipulations have no bearing on where a lease might be offered.

The 2015 Plans' prioritization requirement, on the other hand, has no effect on the intensity of use that may occur within any given lease. The 2015 Plans' prioritization requirement instead controls where leases should be offered. The 2015 Plans establish two levels types of habitat management areas for Sage Grouse: priority habitat management areas ("PHMA"), which are public lands with "the highest value to maintaining sustainable [Sage Grouse] populations;" and general habitat management areas ("GHMA"), which are "lands where some special management will apply to sustain [Sage Grouse] populations" based upon "occupied seasonal or year-round habitat outside" of Sage Grouse not rising to the level of a PHMA. *See, e.g.*, WY066635.

The 2015 Plans' prioritization requirement serves "to further limit future surface disturbance and encourage new development in areas that would not conflict with" greater Sage Grouse. WY072017 (Rocky Mountain Record of Decision (ROD) at 1-25). To meet this purpose, BLM determined that it was required to first focus on oil and gas leasing outside of PHMAs and GHMAs "in order to minimize further fragmentation and impacts to [Sage Grouse] habitat or populations." BLMIM026-000751-752. BLM also must consider leasing in GHMA's before any leasing in PHMA's. *Id.*

Lease stipulations and the 2015 Plans' prioritization requirement thus differ in how they protect Sage Grouse. Stipulations protect Sage Grouse without regard for protecting particular areas of Sage Grouse habitat. Prioritization, on the other hand, specifically protects Sage Grouse habitat based upon the type of habitat that a given area provides. *See, e.g.*, WY066635. To make this distinction clear, BLM could include stipulations in every lease without ever having to consider what areas should be prioritized for leasing and what areas should be prioritized for Sage Grouse habitat. This outcome would violate of the 2015 Plans' prioritization requirement.

The 2015 Plans themselves make plain that stipulations provide a separate protection from prioritization:

> When analyzing leasing and authorizing development of fluid mineral resources … in [Priority Habitat Management Areas] and [General Habitat Management Areas], *and subject to applicable stipulations* for the conservation of [Sage Grouse], priority will be given to

6

development in non-habitat areas first and then in the least suitable habitat for [Sage Grouse].

WY066649 (Wyoming plan at 24) (emphasis added); Nevada plan at 2-28 (emphasis added). Even when BLM applies stipulations, it still must give priority "to development in non-habitat areas first." *Id.* Lease stipulations may not be used as a mechanism for the BLM to avoid the 2015 Plans' prioritization requirement. The Court cannot rely on stipulations provided by the Phase Two lease sales when evaluating BLM's compliance with the 2015 Plans' prioritization requirement.

    **b. The Phase Two lease sales failed to incorporate the 2015 Plans' prioritization requirement.**

*Nevada Lease Sales*

BLM offered more than 750,000 acres of oil and gas leases in the Phase Two Nevada lease sales. NV-DEC-010610 (December 2017 sale); NV-MAR-000820 (March 2018 sale); NV-JUN-004109 (June 2018 sale). BLM failed to consider the 2015 Plans' prioritization requirements in the environmental assessments for these lease sales.

Nothing in the administrative record for the Nevada lease sales suggests that BLM considered prioritization's purpose of guiding development away from Sage Grouse habitat. BLM failed to address the proximity of leases in PHMA or GHMA to existing oil and gas development. BLM failed to analyze whether the value of

Sage Grouse habitat warranted deferring some leases that were far removed from existing development.

When BLM received protests that the 2015 Plans' prioritization requirements had not been met by the Nevada lease sales, BLM either pointed to the unlawful 2018 IM or suggested that lease stipulations supplanted the need for prioritization. BLM expressly cited the 2018 IM in its dismissal of the June 2018 sale protests. NV-JUN-002849. BLM stated that it followed the "specifically outlined guidance on prioritization implementation listed in the [2018 IM]" when responding to a protest from the Wilderness Society. *Id.*

BLM offered the same rationale in the December 2017 and March 2018 sales. In the December 2017 sale, BLM offered 208 parcels in Nevada, totaling almost 389,000 acres. (Doc 198 at 10.) Roughly 95 percent of the parcels contained Sage Grouse habitat. The NEPA document for the sale failed to mention the prioritization requirement of the 2015 Plans. When protests complained that the BLM failed to consider prioritization, BLM responded only that it had identified the habitat types present and attached stipulations based on the mapping. *See* NV-DEC010888. The March 2018 sale provided precisely the same reasoning and reliance on stipulations. *See* NV-MAR000818-819.

BLM failed to demonstrate that it considered prioritization in these lease sales. *See* NV-DEC-010610; NV-MAR-000820; NV-JUN-004109. BLM's own responses

to protests directly contradict prioritization. *See* NV-DEC010888; NV-MAR000818-819; NV-JUN-002849. As a result, the Court must conclude that the Phase Two Nevada lease sales violated FLPMA by failing to meet the 2015 Plans' prioritization requirement.

*Wyoming Lease Sales*

BLM's December Wyoming 2017 lease sale offered 45 parcels, 42 of which overlapped with either PHMA or GHMA. WY120986. BLM noted that some parcels contained "active [Sage Grouse] leks within their boundaries," some parcels in PHMA were distant from existing oil and gas production, and some were on lands with low potential for oil and gas development. *Id.*; *see also* WY118239. BLM's March 2018 lease sale offered 170 leases totaling more than 170,500 acres in Wyoming. The sale included 89 parcels in BLM's Wind River/Bighorn Basin District, of which 79 were within PHMA or GHMA. WY130986. An additional 81 parcels were in the agency's High Plains District, of which 14 were within PHMA and 23 were within GHMA. WY130898-899.

Similar to the Nevada lease sales, the administrative record contains nothing to suggests that BLM considered prioritization's purpose of guiding development away from Sage Grouse habitat. Here too, BLM failed to address the proximity of leases to existing oil and gas development. *See generally* WY120974; WY130847; WY130933. BLM failed to consider whether the location of leases in PHMA or

GHMA areas warranted deferring leases because of their overlap within PHMAs or GHMAs.

The Wind River/Bighorn Basin District Environmental Assessment from the March 2018 sale provides the only assessment to mention the prioritization requirement. The document does not actually discuss prioritization. It simply states that it had applied lease stipulations to leases in Sage Grouse habitat. WY130987. BLM made no attempt to explain how that decision could follow the 2015 Plans' prioritization requirement or the 2016 IM. Stipulations cannot substitute for prioritization.

BLM relied on the same rationale adopted in the 2018 IM when responding to protests to the December 2017 lease sale. BLM focused on the 2015 Plans' designation of PHMA and GHMA as "open" for leasing and asserting that stipulations provided the necessary protections under the 2015 Plans. WY121535. BLM also stated that it declined to consider deferring leases in Sage Grouse habitat because stipulations "provide for appropriate levels of Greater Sage-grouse protection." WY120968.

BLM quoted the 2018 IM's direction in denying an administrative appeal to the March 2018 lease sale. BLM noted that that the agency "does not need to lease and develop outside of [Sage Grouse] habitat management areas before considering any leasing and development within [Sage Grouse] habitat" WY131018-019, 025.

BLM's response to protests from the March 2018 sale also stated that prioritization required only that it consider the factors from the 2016 IM. BLM suggested that nothing required it to actually apply the requirements to guide leasing away from Sage Grouse habitat. *See* WY121535 (Protest Dismissal at 16). As the Court concluded in the Phase One order, this theory conflicts with the 2015 Plans, as it makes prioritization nothing more than a "procedural hurdle." (*See* Doc. 147 at 24.)

Both of the Wyoming Lease sales failed to adequately implement the 2015 Plans' prioritization requirement. The Wyoming Lease sales violated FLPMA in failing to implement the prioritization requirement.

## II. Vacatur of the Phase 2 lease sales represents the appropriate remedy.

The Court reviews the Phase 2 lease sales under the Administrative Procedure Act ("APA"). The APA permits the Court to "set aside" final agency actions deemed "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 702(2)(A); *see Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 538 F.3d 1172, 1194 (9th Cir. 2008).

The Ninth Circuit remands agency actions without vacating that action only in "limited circumstances." *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (quoting *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 994 (9th Cir. 2012)); *see Wood v. Burwell*, 837 F.3d 969, 975-76 (9th Cir. 2016) (recognizing that remand without vacatur is a remedy "used sparingly"). A court

must "weigh the seriousness of the agency's errors against 'the disruptive consequences of an interim change that may itself be changed'" when determining whether to leave an agency action in place on remand. *Cal. Cmtys. Against Toxics*, 688 F.3d at 992 (quoting *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C.Cir.1993)).

The Court will vacate the Phase 2 leases. BLM's errors in granting these leases undercut the purpose of the 2015 Plans' priority requirement and prevent BLM from fulfilling the requirement's goals. Given the agency's errors, the Court cannot see "a serious possibility that the [agency would] be able to substantiate its decision on remand." *Allied-Signal, Inc.*, 988 F.2d at 151. The failure to consider the 2015 Plans' prioritization requirement infected every step of the environmental assessment process and cannot be remedied after the fact. Adequate implementation of the 2015 Plans' priority requirement may necessitate that BLM not include parcels included in the lease sales. The Court must vacate the lease sales in their entirety.

The Court will deny Federal Defendant's motion to remand the December 2017 Nevada lease sale without vacatur (Doc. 207) for the same reason. Federal Defendants state that the motion serves to conduct additional analysis of the impacts of December 2017 Nevada lease sale leasing decision on Sage Grouse while maintaining the leases sold in the lease sale. (Doc. 208 at 3.) The Court has "broad discretion" in deciding whether to grant requests for voluntary remand. *Utility Solid*

*Waste Activities Group v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018). The Court will not remand without vacatur here, as the lease sale violated FLPMA. BLM's purpose for the motion—to maintain the lease sales—serves as a mechanism to avoid judicial review. *See Cal. Cmtys.*, 688 F.3d at 992, citing *Lutheran Church–Mo. Synod v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998).

### III. The Court will stay the Phase 2 lease vacatur and suspend any operation or production related to those leases pending appeal.

The Court stayed vacatur of the Phase 1 lease sales pending appeal. (Doc. 189.) The Court has relied on similar reasoning in vacating the Phase 2 lease sales as it did in vacating the Phase 1 lease sales. The Court will stay vacatur of the Phase 2 lease sales pending appeal of the Phase 1 lease sales and any appeals that may arise from this order. Just as was the case for the Phase 1 lease sales, a stay which leaves things as they are currently in place, not to move forward nor to move backward, achieves a sensible and fair balance of the competing interests at this stage of the case. (*See id.* at 2-6.) The Phase 2 lease sales are not to be undone at this time, but are suspended—there shall be no further work developing the Phase 2 leases or obtaining production from such leases in any way pending appeal.

The Court will consider motions from any party requesting additional detail as to what work, if any, to maintain the suspended status quo will be permitted. Any such motion should be accompanied by information about the nature and need for

such work to allow other parties to respond to the motion and for the Court to make an informed decision.

## ORDER

Accordingly, **IT IS ORDERED** as follows:

- Plaintiffs' Motion for Summary Judgment (Doc. 197) is **GRANTED, IN PART**. Plaintiffs' claims that the 2018 IM and lease sales violated the FLPMA are granted.

- Plaintiffs' motion (Doc. 197) is also **DENIED, IN PART**. Plaintiffs' claims that the lease sales violated NEPA are denied without prejudice as moot.

- Federal Defendants' Motion to Remand to U.S. Bureau of Land Management (Doc. 207) is **DENIED**.

- Federal Defendants' Cross Motion for Summary Judgment (Doc. 210) is **DENIED**.

- Defendant-Intervenor State of Wyoming's Cross Motion for Summary Judgment (Doc. 217) is **DENIED**.

- Defendant-Intervenors Western Energy Alliance's Cross Motion for Summary Judgment (Doc. 219) is **DENIED**.

- Vacatur of the Phase 2 lease sales will be stayed and operations related to those leases will be suspended pending the Phase 1 appeal and any appeals arising from this order.

DATED this 11th day of March, 2022.

_____
Brian Morris, Chief District Judge
United States District Court