# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| **MONTANA WILDLIFE FEDERATION**, *et al.*, | **CV-18-69-GF-BMM** |
| Plaintiffs, | |
| vs. | **ORDER** |
| **DAVID BERNHARDT**, in his official capacity as Secretary of the Interior, *et al.*, | |
| Defendants, | |
| **WESTERN ENERGY ALLIANCE**, *et al.*, | |
| Defendant-Intervenors. | |

## INTRODUCTION

Montana Wildlife Federation, Wilderness Society, National Audubon Society, National Wildlife Federation, and Montana Audubon (collectively "Plaintiffs") sued then-Secretary of the Interior Ryan Zinke, Montana Bureau of Land Management Deputy State Director Donato Judice, the U.S. Bureau of Land Management, and the U.S. Department of the Interior (collectively, "Federal Defendants") challenging the BLM's issuance of the 2018 Instruction Memorandum

1

on Greater Sage Grouse conservation and subsequent oil and gas leasing decisions. The States of Wyoming and Montana, Western Energy Alliance, Anschutz Exploration Corporation, Peak Powder River Acquisitions, LLC, and R&R Royalty, Ltd., have intervened. The Court granted Anschutz Exploration Corporation's ("AEC") motion to intervene in Phase Three (Doc. 305) but denied AEC's motion to intervene in the appeal of the Phase One summary judgment order. (Doc. 185.) The Ninth Circuit reversed this Court's decision denying AEC's intervention in the Phase One Appeal. (Doc. 339.) The Court will amend its August 24, 2020 order denying AEC's intervention to allow AEC leave to intervene in the appeal of the Phase One summary judgment order for the reasons discussed in Part I of this decision.

Chesapeake Exploration, LLC, ("Chesapeake") and Continental Resources, Inc., ("Continental") have moved to intervene in the Phase Two appeal and Phase Three. (Doc. 347.) The Court will grant Chesapeake and Continental's motion to intervene for the reasons discussed in Part II of this decision.

Also pending before the Court are motions to dismiss or sever the Phase Three lease claims filed by Western Energy Alliance, the State of Wyoming, and Federal Defendants. (Docs. 268, 270, & 272.) The Court heard oral argument on these motions on September 16, 2021. To evaluate these motions, the Court required the administrative records for the Phase Three leasing decisions. (*See* Doc. 328.) The

Court received the last of the administrative records for those leasing decisions on April 29, 2022. The Court has determined that the motions to dismiss or sever should be denied for the reasons discussed in Part III of this decision.

## BACKGROUND

Plaintiffs challenge the Bureau of Land Management's ("BLM") issuance of the 2018 Instruction Memorandum on Greater Sage Grouse conservation ("2018 IM") and subsequent oil and gas leasing decisions. The Court explained the background of this case in depth in the Phase One and Two summary judgment orders. (Docs. 147 at 1-13; 335 at 1-3.) The Court will assume familiarity with the prior decisions and will summarize only the outcome of those decisions here.

The Court vacated the 2018 IM and three lease sales in Montana and Wyoming for violating Federal Land Policy and Management Act ("FLPMA") in the Phase One order. (*Id.* at 32.) The 2018 IM directed BLM staff to disregard BLM's 2015 Resource Management Plans' ("2015 Plans") prioritization requirements for fluid mineral leasing in Sage Grouse habitat. BLM-IM026-001071 (Instruction Memorandum 2018-026 (Dec. 27, 2017)). The 2018 IM stated that prioritization would apply only where a "backlog" of leasing requests exists. *Id.* The Court determined that the direction to apply leasing prioritization only where a backlog of leasing proposals exists violated FLPMA because "[t]he 2015 Plans do not say that BLM will prioritize non-Sage Grouse habitat in *some* of its decisions.

3

The backlog limitation provides for precisely that result." (*Id*. at 21 (emphasis added)).

The Court also determined that the 2018 IM unreasonably misconstrued the purpose of the 2015 Plans' prioritization requirement and rendered "the prioritization requirement into a mere procedural hurdle." (Doc. 147 at 23-24.) Such an interpretation conflicts with U.S. Fish and Wildlife Service's ("FWS") understanding of the requirement when it declined to list the Sage Grouse under the Endangered Species Act ("ESA"). (*Id.*) The 2018 IM asserted that "BLM does not need to lease and develop outside of [Sage Grouse] habitat management areas before considering any leasing and development within [Sage Grouse] habitat." BLM-IM026-001071 (Instruction Memorandum 2018-026 (Dec. 27, 2017)). The 2018 IM thus ignored the goals of prioritization—to refrain from listing the Greater Sage Grouse under the ESA—by failing to "further limit future surface disturbance and encourage new development in areas that would not conflict with" Sage Grouse habitat. WY072017.

The Court determined that the three lease sales at issue in Phase One also violated FLPMA for failing to properly implement the 2015 Plans' priority requirement. (Doc. 147 at 30-31.) The Court pointed to the Wyoming lease sale's direct reliance on the 2018 IM, and the BLM's statements in the Montana lease sales indicating that it did not apply the prioritization criteria. (*Id.* at 26-27.) The Court

also determined that BLM's failure to apply the prioritization requirement violated FLPMA regardless of whether the agency purported to follow the 2016 IM or the 2018 IM. (*Id.* at 27.)

Phase Two consisted of the five remaining lease sales listed in Plaintiffs' First Amended Complaint: the December 2017, March 2018, and June 2018 Nevada lease sales, and the December 2017 and March 2018 Wyoming lease sales. (Doc. 19 at ¶¶ 68-82.) The Court determined that those lease sales also violated FLPMA for failing to properly implement the 2015 Plans' priority requirement.

Phase Three consists of six Montana and Wyoming lease sales that were added in Plaintiffs' Second Amended and Supplemental Complaint: The lease sales at issue are March and December 2019 Montana lease sales, February, September and December 2019 Wyoming lease sales, and the December 2020 Wyoming lease sale. (Doc. 263.)

## LEGAL STANDARD

### *Intervention and Required Parties*

FRCP 19(a)(2) states that if "a person has not been joined as required, the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2). The issue of a party's alleged indispensability "is sufficiently important that it can be raised at any stage of the proceedings—even *sua sponte*." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968). No precise formula exists for

determining whether a nonparty should be joined under FRCP 19(a). *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1081 (9th Cir. 2010). Facts and circumstances of each case heavily influence whether a nonparty should be joined. *Id.*

FRCP 24 states as follows:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
    (1) is given an unconditional right to intervene by a federal statute; or
    (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) Permissive Intervention.
    (1) In General. On timely motion, the court may permit anyone to intervene who:
        (A) is given a conditional right to intervene by a federal statute; or
        (B) has a claim or defense that shares with the main action a common question of law or fact

Fed R. Civ. P. 24(a)-(b).

Courts generally construe FRCP 24(a) liberally in favor of intervention. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). FRCP 24(a) requires a movant to show the following: "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Id.* Courts deciding motions to intervene as of right are "guided

primarily by practical considerations, not technical distinctions." *See U.S. v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (stating that "equitable considerations" guide determination of motions to intervene as of right) (citation omitted). Nonetheless, the "[f]ailure to satisfy any one of the requirements is fatal to the application." *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

FRCP 24(b) allows courts to grant permissive intervention where the applicant shows "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997). "A motion for permissive intervention pursuant to [FRCP 24(b)] is directed to the sound discretion of the district court." *San Jose Mercury News, Inc. v. U.S. Dist. Court – N. Dist.*, 187 F.3d 1096, 1100 (9th Cir. 1999).

*Motion to Dismiss*

Pursuant to Rule 12(b)(3), a Complaint may be dismissed if it is brought in an improper venue. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). The plaintiff bears the burden of demonstrating that venue is proper. *Id.* Where multiple claims are presented, a plaintiff must establish proper venue as to each claim. *W. Org. of Res. Councils v. BLM*, No. CV 16-21-GF-BMM, 2021 WL

718857, at *11 (D. Mont. Jan. 24, 2017). Where venue is improper, the district court has the discretion to dismiss the case under Rule 12(b)(3) or transfer the case in the interests of justice to an appropriate jurisdiction under 28 U.S.C. § 1406(a). *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992); *Pac. Coast Dist., M.E.B.A. v. Alaska*, 682 F.2d 797, 799 (9th Cir. 1982). If the claims present genuine contested facts, a court draws all reasonable inferences in favor of the non-moving party. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138-40 (9th Cir. 2004)

### Severance of Claims

District courts possess broad discretion when evaluating whether to sever claims pursuant to Federal Rule of Civil Procedure 21. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1297 (9th Cir. 2000). Claims against different parties may be severed for trial or other proceedings if the court determines that the interests of justice would be better served by severance. *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 154 F. Supp.2d 10, 13 (D.D.C. 2001). Severance should be denied where plaintiffs' allegations allege a common series of transactions and occurrences that raise common questions of law and fact applicable to all defendants. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).

## DISCUSSION

**I.    The Court Grants AEC Leave to Intervene in the Phase I Summary Judgment Appeal.**

The Ninth Circuit reversed this Court's decision to deny AEC's motion to intervene in the Phase One summary judgment appeal. (Doc. 325.) The Ninth Circuit stated that AEC should be permitted to intervene "for purposes of appealing the District Court's summary judgment order." (*Id.* at 4.) The Court will amend its order denying AEC's motion, (Doc. 188), and will grant AEC leave to intervene in the Phase One summary judgment order.

The Court will not limit AEC's appeal to remedy issues and will not require supplemental briefing on AEC's arguments as Plaintiffs have requested. (*See* Doc. 341.) The Ninth Circuit specified no limitations that should be placed on AEC's intervention of the Phase One appeal. The Ninth Circuit will determine the proper scope of AEC's appeal. Additionally, the Court will not require supplemental briefing. The Court's Phase One decision has long been final. Any remaining arguments on the merits of this Court's Phase One summary judgment decision belong now before the Ninth Circuit.

II. **The Court Grants Chesapeake and Continental Leave to Intervene in the Phase Two Summary Judgment Appeal and Grants Continental Leave to Intervene in Phase Three.**

Chesapeake purchased five oil and gas leases at issue in Phase Two of this litigation. (*See* Doc. 348 at 1.) Continental bought those leases from Chesapeake. (*Id.*) Chesapeake retains certain obligations under those leases. (*Id.*) Continental purchased six additional leases that will be at issue in Phase Three of this litigation.

Chesapeake and Continental filed a motion to intervene in the appeal of this Court's Phase Two summary judgment order and for Continental to intervene in the Phase Three proceedings. (Doc. 347.) Plaintiffs do not oppose intervention on the condition that Chesapeake and Continental file joint briefs with Western Energy Alliance. Plaintiffs also request that, for the purpose of the appeal, Chesapeake and Continental be limited to arguing the proper remedy, that Chesapeake and Continental's motion to intervene present all evidence and the companies will raise, and that Plaintiffs may respond to the motion to intervene to address those arguments.

The Court determines that Chesapeake and Continental should be granted intervention as a matter of right. In light of the Ninth Circuit's direction to this Court with respect to AEC, and the Ninth Circuit's order with respect to Chesapeake's intervention in *Western Watersheds Project v. Haaland*, 22 F.4th 828 (9th Cir. 2022), Chesapeake and Continental meet the requirements for intervention as a matter of right.

As this Court required of AEC, the Court will require Continental to file joint-briefing with other industry-interveners in the Phase Three summary judgment motions. The Court will not require any of Plaintiffs' additional requests. The Ninth Circuit will determine its requirements for joint briefing, if any, in the Phase Two

Appeal. Chesapeake and Continental are permitted to raise arguments outside those raised in the motion to intervene in subsequent briefing before the Court.

### III. The Court Denies Western Energy Alliance's Motion to Dismiss (Doc. 268), State of Wyoming's Motion to Dismiss or, in the Alternative, to Sever and Transfer (Doc. 270); and Federal Defendants' Motion to Dismiss for Improper Venue (Doc. 272).

Western Energy Alliance, State of Wyoming, and Federal Defendants each move to dismiss Plaintiffs' claims pertaining to the Phase Three Wyoming lease sales. In civil actions against an agency or officer of the United States, venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1).

*30 U.S.C. § 188 proves inapplicable.*

Western Energy Alliance argues that this Court proves an improper venue because Section 188 of Title 30 limits cancellation of mineral leases to the District Court in which that lease is located. (Doc. 269 at 5.) Western Energy Alliance misconstrues the statute. Section § 188 applies only when a lease is cancelled for a lessee's failure to comply with lease terms. 30 U.S.C. § 188 (titled "failure to comply with provisions of lease," and pertaining to circumstances in which a lease is "subject to cancellation by the Secretary of the Interior after 30 days notice upon the failure of the lessee to comply with any of the provisions of the lease.") Failure of a

11

lessee to comply with lease terms is not at issue in this case. Section 188 therefore has no bearing on the venue determination.

> *BLM Deputy State Director Judice proves a proper defendant who resides in Montana.*

The Court begins the venue analysis with Section 1391(e)(1)(A) of Title 28—whether a defendant resides in Montana. Specifically, the Court must answer whether Plaintiffs' inclusion of Montana's BLM Deputy State Director Donato Judice ("Director Judice") is sufficient for this Court to be a proper venue for Plaintiffs' claims.

Whether Director Judice qualifies as an appropriate federal employee to determine venue poses an important threshold question. Defendant-Intervenor Wyoming contends that Director Judice serves as a subordinate federal official insufficient to establish venue for claims challenging the lease sales. Courts have determined previously that plaintiffs may not sue a subordinate official in order to establish venue or jurisdiction. *See Hartke v. FAA*, 369 F. Supp. 741, 746 (E.D.N.Y. 1973).

The Court determines that Director Judice is not a subordinate employee and is thus an appropriate federal employee to evaluate venue. Where at least one defendant "reside[s] in Montana and some of the operative facts occurred in Montana [. . .] venue could be proper in the District of Montana" *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001). This rule

proves true even where the resident defendant did not have ultimate or total authority over the policy at issue. *Id.* Director Judice oversaw the Montana lease sales implementing the national directives at issue in this case. Director Judice approved the Montana oil and gas lease sales that Plaintiffs allege are in violation of FLPMA and NEPA. Director Judice's role as a Director of BLM proves sufficient to confer venue in this Court.

The Court next must consider whether Director Judice's involvement in the Montana lease sales also proves sufficient to confer venue over the Wyoming lease sales. Defendants argue that Director Judice played no role in the Wyoming lease sales. Defendants suggest that each distinct leasing sale at issue in this litigation should be considered its own claim. Defendants argue that where multiple claims are presented, Plaintiffs must show proper venue as to each claim. The Wyoming "claims," under Defendants' theory, are insufficient to establish venue under Section 28 U.S.C. § 1391(e)(1)(A) because no defendant with decision-making authority over the Wyoming leasing decisions resides in Montana.

The Court determines that Defendants' arguments tread a common error when attempting to dissect Plaintiffs' Complaint by each individual lease sale. Defendants surmise that each lease constitutes its own claim. The Court disagrees that the object of this case is the individual leasing decisions or the leases themselves. As the Court noted in its order denying the severance and transfer of the Phase One Nevada and

Wyoming lease sales, Plaintiffs' claims challenge national directives—the 2018 IM and the Zinke Memo:

> Plaintiffs challenge a single action by a federal agency that presents common questions of law and fact. Plaintiffs allege that the lease sales at issue violate FLPMA because they follow the Zinke Memo and the 2018 IM. Plaintiffs do not challenge the individual leasing decisions. Plaintiffs instead bring a facial challenge to the Zinke Memo and the 2018 IM with separate as-applied challenges that involve the lease sales in three states.

(Doc. 62 at 9.) Other courts have treated causes of action concerning multiple leases as one claim. *See, e.g.*, *Pit River Tribe v. BLM*, No. 19-cv-02002-PJH, 2019 WL 6341566, at *2 (N.D. Cal. Nov. 27, 2019). Consistent with the Court's prior conclusion that this litigation targets national directives, the Court determines that the claims relate based on the alleged violation of a particular federal statute and that the claims do not challenge the individual leasing decisions.

Director Judice thus stands as a proper defendant for Plaintiffs' challenge to the 2018 IM and subsequent leasing decisions. Director Judice oversaw and provided approval for the leasing decisions that implemented the 2018 IM. The elements of 28 U.S.C. § 1391(e)(1)(A) are met to confer venue in this Court.

Having found venue proper under Section 1391(e)(1)(A) of Title 28, the Court need go no further. The Court will continue to analyze, however, the remaining factors under 28 U.S.C. § 1391(e)(1).

*A substantial part of the events giving rise to Plaintiffs' claims occurred in Montana.*

14

The District of Montana represents a proper venue for Plaintiffs' claims if a substantial part of the events giving rise to Plaintiffs' claims occurred in Montana. 28 U.S.C. § 1391(e)(1)(B). Defendants argue that Plaintiffs cannot satisfy Section 1391(e)(1)(B) of Title 28 because no part of the events giving rise to the Wyoming claims occurred in Montana. Defendants contend that the Wyoming State Office of BLM conducted the Wyoming lease sales, including relevant procedural steps and the Environmental Assessment. Defendants also point to the relatively small amount of land and revenue that the Montana lease sales comprise in the Supplemental Complaint as compared to the Wyoming Lease sales. The Montana leases involve less than 2% of the total proceeds, and less than 11% of the total acreage for the leases involved in the Phase Three claims. (Doc. 269 at 14.)

Defendants once again misconstrue the Supplemental Complaint by framing the challenges to Wyoming lease sales as separate claims from the challenges to the Montana leases sales. The Supplemental Complaint does not add new claims—much less Wyoming- or Montana-specific claims. Instead, the Supplemental Complaint adds factual allegations in support of the same claims asserted in the prior Complaint, i.e., that the 2018 IM violates FLPMA and the lease sales that relied on the 2018 prioritization requirements violated NEPA.

A substantial part of Plaintiffs' alleged violations of administrative law occurred in Montana. Section 1391(e)(1)(B) of Title 28 "does not require that a

majority of the events have occurred in the district where suit is filed." *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 752 (N.D. Cal. 2015); *see also Farm Credit W., PCA v. Lanting*, No. 1:13-cv-00712-AWI-SMS, 2013 WL 3730391, at *2 (E.D. Cal. July 12, 2013). Four of the lease sales challenged by Plaintiffs were processed by the BLM's Montana State Office. (Doc. 263.) Those four sales made leases available for purchase in Montana. The four Montana lease sales prove sufficient to establish venue in the District of Montana under Section 1391(e)(1)(B) of Title 28.

*Plaintiffs reside in Montana and real property is not the target of this action.*

The District of Montana proves a proper venue if the plaintiff resides in the venue and no real property is involved in the action. 28 U.S.C. § 1391(e)(1)(C). Both Montana Wildlife Federation and Montana Audubon reside in the District of Montana. The critical issue for Section 1391(e)(1)(C) of Title 28 is whether real property is "involved" in the action.

Defendants contend that federal oil and gas leases constitute real property interests in the context of 28 U.S.C. § 1391(e)(1)(C). The Court agrees. The Court previously has stated that oil and gas leases are "an actual property interest." *W. Org. of Res. Councils v. BLM*, 2021 WL 718857, at *4; *see also Union Oil Co. v. Morton*, 512 F.2d 743, 747 (9th Cir. 1975). Other courts have concluded that oil and gas leases are property under constitutional takings challenges. *See, e.g., Bass Enters.*

16

*Prod. Co. v. United States*, 45 Fed. Cl. 120 (1999). Defendants point out that at least two of the Wyoming leases are currently producing oil. (Doc. 269 at 10.)

The claims at issue in this case do not center, however, on a dispute over the right, title, or interest in real property. As this Court recently explained, "the touchstone of the venue provision 'cannot sensibly be whether real property is marginally affected by the case at issue. Rather, the action must center directly on the real property, as with actions concerning the right, title or interest in real property.'" *W. Org. of Res. Councils v. BLM*, 2021 WL 718857, at *4 (citation omitted); *see also W. Watersheds v. Schneider*, No. 1:16-CV-83-BLW, 2019 WL 4863483, at *3 (D. Idaho 2019) (finding that a NEPA challenge against land use plans centered on "an agency's compliance with statutory mandates" and did not involve real property).

As discussed above, Plaintiffs' claims challenge the violation of regional land management plans adopted to protect the greater sage-grouse, and the agency's failure under NEPA to analyze the environmental impacts of oil and gas leasing across multiple states. The Supplemental Complaint thus challenges BLM's application of a national policy decisions, not individualized property interests. The Court's remedy may or may not affect individual oil and gas leases, but that fact does not convert an administrative challenge over federal land management into a

17

real property dispute. Venue is thus also proper in the District of Montana under Section 1391(e)(1)(C) of Title 28.

*The Court will not sever and transfer the Wyoming lease sales.*

Defendants request, as an alternative, that the Court sever and transfer the Wyoming lease sales. (*See, e.g.*, Doc. 273 at 12-24.) Severance should be denied where Plaintiffs allege a common series of transactions and occurrences that raise common questions of law and fact applicable to all defendants. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). The analysis to sever and transfer in this instance is no different than Federal-Defendants prior motion to sever and transfer the Nevada and Wyoming leasing decisions in Phase One. (*See* Doc. 20.) The Court will rely again on that analysis here. The Court denied that motion because Plaintiffs' challenge targets a single action by a federal agency that presents common questions of law and fact. (Doc. 62 at 8-9.) The Court determined previously that because Plaintiffs bring a facial challenge to the 2018 IM with separate as-applied challenges to the lease sales, severance would have served only to create multiple cases involving the same questions of law and fact. (*Id.*)

The Phase Three lease sales do not pose a more localized controversy than the Phase One lease sales. Once again, the question in Phase Three remains whether any of the lease sales applied the 2018 IM's prioritization requirement, and whether the 2018 IM violated FLPMA. Plaintiffs' NEPA claim likewise presents identical

18

questions, consistent across the lease sales, should the Court need to reach that claim. The Court will not sever and transfer for the reasons discussed in its prior order (Doc. 62.).

## ORDER

Accordingly, **IT IS ORDERED** as follows:

- The Court amends its prior order denying AEC's motion to intervene in the Phase One appeal. (Doc. 185.) AEC's motion to intervene (Doc. 154) is **GRANTED**.

- Chesapeake and Continental's motion to intervene in the Phase Two appeal and Phase Three (Doc. 347.) is **GRANTED**. Chesapeake and Continental shall file joint motions and memoranda with AEC, Peak Powder River Acquisitions, R&R Royalty, and Western Energy Alliance in the course of briefing in Phase Three.

- Western Energy Alliance's Motion to Dismiss (Doc. 268), State of Wyoming's Motion to Dismiss or, in the Alternative, to Sever and Transfer (Doc. 270); and Federal Defendants' Motion to Dismiss for Improper Venue (Doc. 272) are **DENIED**.

- The Parties shall jointly submit a status report on or before July 20, 2022, regarding proposed scheduling for Phase Three Cross-motions for Summary Judgment.

DATED this 5th day of July, 2022.


Brian Morris, Chief District Judge
United States District Court