IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| MONTANA WILDLIFE FEDERATION et al., <br><br> Plaintiffs, <br><br> v. <br><br> DOUGLAS BURGUM, in his official capacity as Secretary of the Interior, et al., <br> Defendants. | CV-18-69-GF-BMM <br><br> ORDER ON <br> MOTION TO REMAND |

Defendant U.S. Department of Interior ("Federal Defendants") moves for a voluntary remand of the Bureau of Land Management ("BLM") leasing decisions at issue in Phase Three. (Doc. 451.) Plaintiffs oppose the motion. (Docs. 471.) The Court previously has allowed the State of Wyoming, Jonah Energy, LLC, Western Energy Alliance, Anschutz Exploration Corporation, Inc., Peak Powder River Acquisitions, LLC, R&R Royalty, Ltd., Continental Resources, LLC, Chesapeake Exploration, LLC, and Rockies Resources, LLC to intervene as Defendants in this action (collectively "Intervenor Defendants"). (Docs. 305, 365, 378, 402, 501.) Intervenor Defendants generally support the motion. (Docs. 460, 463, 465.) The Court held a hearing on the motion on December 1, 2025. (Doc. 499.)

1

## BACKGROUND

Plaintiffs challenge BLM's issuance of the 2018 Instruction Memorandum ("2018 IM") on greater sage-grouse conservation and subsequent oil and gas leasing decisions. The Court explained the background of this case in depth in the Phase One and Phase Two summary judgment orders. (Doc. 147 at 1–13; Doc. 335 at 1–3.) The Court will assume familiarity with the prior decisions and will summarize only the outcome of the Phase One and Phase Two orders here.

The Court vacated the 2018 IM and three lease sales in Montana and Wyoming for having violated FLPMA in the Phase One order. (Doc. 147 at 32.) The Court found that Federal Defendants violated FLPMA as the 2018 IM presented inconsistencies with the 2015 Resource Management Plans ("2015 Plans"). (*Id*.) Federal Defendants appealed the decision. (Doc. 158.) The Ninth Circuit affirmed the Court's Phase One order in January 2025. (Doc. 416.)

The Court similarly vacated the 2018 IM and five lease sales in Nevada and Wyoming for having violated FLPMA in the Phase Two order. (Doc. 335 at 4.) BLM previously had sought voluntary remand of one of the Phase Two lease sales. (Doc. 207.) The Court denied the motion for voluntary remand. (Doc. 335 at 12–13.) The Court determined that Federal Defendants had sought remand to avoid judicial review. (*Id*. at 13.) Federal Defendants again appealed the decision. (Doc. 346.) The Phase Two appeal remains pending.

Phase Three consists of six Montana and Wyoming lease sales that Plaintiffs added in their Second Amended and Supplemental Complaint. (Doc. 263.) The lease sales at issue are the March and December 2019 Montana lease sales, the February, September, and December 2019 Wyoming lease sales, and the December 2020 Wyoming lease sale. (Doc. 263.)

The Court entered a Scheduling Order for Phase Three that required Plaintiffs to move for summary judgment by October 27, 2025. (Doc. 447.) The Scheduling Order required Federal Defendants to respond and cross-move for summary judgment by December 11, 2025. (*Id.*) Federal Defendants filed a motion for voluntary remand on October 3, 2025. (Doc. 451.)

## LEGAL STANDARD

A court possesses "broad discretion" in deciding whether to grant requests for voluntary remand. *Utility Solid Waste Activities Group v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018). A court must "weigh the seriousness of the agency's errors against 'the disruptive consequences of an interim change that may itself be changed'" when determining whether to leave an agency action in place on remand. *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012). The Ninth Circuit remands agency actions without vacating that action only in "limited circumstances." *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015). The agency must "establish an intent to seriously reconsider or re-review its decision."

3

*Ctr. for Biological Diversity v. Burgum*, 2025 WL 1255145, at *5 (C.D. Cal. Mar. 21, 2025). A court may deny motions for voluntary remand under the following circumstances: (1) where parties bring the motion in bad faith; (2) when the motion proves frivolous, *Cal. Cmties. Against Toxics*, 688 F.3d at 992; or (3) where a remand would "unduly prejudice" other parties, *Util. Solid Waste Activities Grp.*, 901 F.3d at 436.

## DISCUSSSION

### I. Whether Remand Proves Appropriate for Review of the Leasing Decisions

Federal Defendants seek voluntary remand of the Phase Three leasing decisions. (Doc. 451.) Federal Defendants further contend that remand proves warranted to allow BLM the opportunity to reevaluate the leasing decisions given several new legal and factual interventions. (Doc. 451-1 at 6.) Plaintiffs oppose voluntary remand. (Doc. 471.)

#### A. Whether Federal Defendants' Motion to Remand Lacks Good Faith or Proves Frivolous

Plaintiffs assert that avoiding judicial review represents Federal Defendants' primary motivation in moving for voluntary remand. (Doc. 471 at 12.) Plaintiffs cite the Court's decision in *Western Organization of Resource Councils v. BLM*, 2022 WL 3082475 (D. Mont. Aug. 3, 2022), as support.

*Western Organization* involved a challenge to an agency's analysis of its resource management plans. 2022 WL 3082475 at *1. The court initially remanded the challenged resource management plans to BLM for further National Environmental Policy Act ("NEPA") review. *Id*. BLM later completed a new NEPA analysis of the resource management plans. *Id*. at 4. The new analysis failed to address the previous inadequacies identified in the court's remand order. *Id*. The plaintiffs challenged the new analysis. *Id*. at *1.

BLM moved for remand without vacatur right before submitting its reply for summary judgment. *Id*. The court denied the motion for remand without vacatur. *Id*. at *4. The remand motion proved "frivolous and demonstrate[d] a lack of good faith." *Id*. BLM "fail[ed] to admit specific error or demonstrate which actions will be taken to correct the infirmities" the court previously had identified. *Id*. The court further determined that remand without ruling on "the merits of the case [] would substantially prejudice Plaintiffs." *Id*.

*Western Organization* proves distinguishable. Unlike *Western Organization* where BLM moved for remand before submitting its reply for summary judgment, Federal Defendants moved for remand before the deadlines had passed to submit summary judgment briefing on the merits of Phase Three. BLM's motion for remand in *Western Organization* also happened after the court previously had remanded the resource management plans for a more robust NEPA analysis. *Id*. at *1. The court

5

rejected the new motion to remand as a lack of good faith because BLM earlier had failed to resolve the inadequacies of the NEPA analysis. *Id.* at *4. The Court, by contrast, has never remanded the leasing decisions to BLM in this litigation. Federal Defendants have shown no lack of good faith in following the Court's orders.

The motion to remand is also likely not frivolous. Federal Defendants present plausible reasons to support the motion to remand. Federal Defendants assert that significant changes in the law and certain changes in the facts warrant remand. (Doc. 451-1 at 6; Doc. 478 at 1.) The Court remains unconvinced that Federal Defendants filed the motion to remand as a tactic to avoid judicial review on the merits.

**B.    Whether BLM Intends to Seriously Review Its Leasing Decisions**

Federal Defendants first argue that the One Big Beautiful Bill Act ("OBBBA") changed how BLM must consider expressions of interest in conducting its leasing processes. (Doc. 451-1 at 16, 18.) Federal Defendants further argue that BLM's revisions to the greater sage-grouse resource management plan may remove or change the prioritization objective that stands central to Plaintiffs' FLPMA claims. (*Id.* at 21.) Lastly, Federal Defendants contend that new regulations governing NEPA changed Plaintiffs' NEPA claims. (*Id.* at 22.) Plaintiffs disagree that the OBBBA and the potential revisions to the greater sage-grouse management plan require remand. (Doc. 471 at 17, 18.) Plaintiffs argue that the changes and

6

potential revisions would apply only prospectively to the leases and fail to invalidate the 2019 and 2020 leasing decisions. (*Id*. at 20.)

A voluntary remand may prove appropriate where an "intervening event may affect the validity of the agency action." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001). An agency "ordinarily needs to profess intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge" for a court to grant voluntary remand. *Ctr. for Biological Diversity*, 2025 WL 1255145, at *5. For example, the court in *Keltner v. United States* denied an agency's motion for remand where "the government's primary goal on remand [wa]s to write a better decision for a predetermined outcome." 148 Fed. Cl. 552, 565 (2020). The court in *American Waterway Operators v. Wheeler* similarly denied a motion for voluntary remand where "[i]t appear[ed] . . . that [an agency] would simply like a second bite at the apple" to reaffirm its prior decisions. 427 F. Supp. 3d 95, 98 (D. D.C. 2019).

Federal Defendants fail to demonstrate "an intent to seriously reconsider or re-review [their] decision" on the Phase Three leases. *Ctr. for Biological Diversity*, 2025 WL 1255145, at *5. Federal Defendants suggest that remand potentially would require BLM to reaffirm the leases by applying a potential rule that effectively would cancel the prioritization requirement. (Doc. 451-1 at 16.) Federal Defendants also point to the fact that the Department of Interior recently rescinded and amended

7

certain NEPA regulations relevant to Plaintiffs' claims. (*Id.* at 22–23, citing 90 Fed. Reg. 12,690 (Mar. 19, 2025)). Federal Defendants cannot rely on new or potential laws that would apply to future leasing decisions to demonstrate an intent to reconsider or review seriously their previous decision. Courts "look to the regulations in place at the time of the challenged decision." *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 879 n.5 (9th Cir. 2022).

The OBBBA would not govern the Phase Three leasing decisions. *Id.* The text of the OBBBA expressly requires BLM to apply the OBBBA's provisions prospectively. Pub. L. No. 119-21, § 50101(b)(1) (2025). Federal Defendants also have failed to demonstrate Congress's intent for BLM to apply the OBBBA's provisions to past lease sale determinations. *See Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*, 128 F.4th 1089, 1100 n.3 (9th Cir. 2025). The Ninth Circuit in *Prutehi Litekyan* specifically recognized that "Congressional enactments . . . will not be construed to have retroactive effect unless their language requires this result." *Id.* (citation omitted). Federal Defendants seem to request remand as means to provide a new rationale for reaffirming the prior leasing decisions. *Keltner*, 148 Fed. Cl. at 565; *see also Am. Waterway Operators*, 427 F. Supp. 3d. at 98.

Federal Defendants next contend that the recent U.S. Supreme Court decision in *Seven County Infrastructure Coalition v. Eagle County*, 605 U.S. 168 (2025) supports voluntary remand. (Doc. 451-1 at 22.) Plaintiffs assert that the holding in

*Seven County* fails to provide a basis for remand unless Federal Defendants identify a flaw in the prior NEPA analysis that would warrant a correction or reconsideration of the decision. (Doc. 471 at 22.)

*Seven County* dealt with the question of whether a circuit court followed the appropriate standards of review in evaluating an agency's environmental analysis. 605 U.S. at 179. The D.C. Circuit had vacated the U.S. Surface Transportation Board's final order approving an 88-mile railroad line across several counties in Utah. *Id*. at 173. The D.C. Circuit remanded the case to the agency for further review and NEPA analysis upon ruling on the merits of the plaintiffs' claims. *Id*. at 173–74, 177. The U.S. Surface Transportation Board petitioned for certiorari review. *Id*. at 177. The U.S. Supreme Court granted the petition. *Id*.

The U.S. Supreme Court reiterated that "deference" remains the "bedrock principle" governing judicial review of NEPA cases. *Id*. at 1511, 1515. The U.S. Supreme Court acknowledged that an agency "will invariably make a series of fact-dependent, context-specific, and policy-laden choices about the depth and breadth of its inquiry." *Id*. at 1513. The U.S. Supreme Court warned that "courts should afford substantial deference" to an agency's determinations "so long as [the decisions] fall within a broad zone of reasonableness." *Id*. at 183.

*Seven County* fails to support voluntary remand in this case. *Seven County* involved a different question than the one presented here of whether Federal

9

Defendants have demonstrated "an intent to seriously reconsider or re-review [their prior] decision." *Ctr. for Biological Diversity*, 2025 WL 1255145, at *5. *Seven County* fails to opine that a court should grant voluntary remand upon a motion by an agency that it seeks to re-review its previous decision. *Seven County* suggests instead that a court must apply "substantial deference" to an agency's decisions when evaluating the "reasonableness" of the decision. 605 U.S. at 183. The Court can apply the judicial standards pronounced in *Seven County* when evaluating the merits of Plaintiffs' claims.

Federal Defendants next assert that the facts of the case have changed significantly. (Doc. 451-1 at 24.) Federal Defendants point out that only nine leases among the 1,111 lease parcels sold have producing wells. (*Id*.) Federal Defendants contend that remand would allow BLM to review leasing decisions where a continued interest in leasing remains present, including any recent data on greater sage-grouse populations and habitat. (*Id*.) The Court will not grant remand on this fact alone. Federal Defendants remain free to present the fact that only a small number of the challenged leases have been developed in their response to Plaintiffs' motion for summary judgment and cross-motion for summary judgment.

### C. Whether Remand Would Be Prejudicial

Federal Defendants further argue that Plaintiffs will not suffer prejudice if the Court grants voluntary remand and that voluntary remand will conserve judicial

resources and resolve litigation. (Doc. 451-1 at 27, 29.) Plaintiffs disagree. (Doc. 471 at 24, 25.)

To remand the Phase Three leases at this late stage would unduly prejudice Plaintiffs. *See Util. Solid Waste Activities, Grp.*, 901 F.3d at 436. Litigation has gone on for more than seven years. The Court retained the administrative record for all six Phase Three sales. (Docs. 330, 331, 342.) Plaintiffs have filed their summary judgment briefing. (Doc. 452.) The Ninth Circuit previously resolved issues pertinent to Phase Three in its former decisions on Phase One claims: (1) what the prioritization requirement entails; (2) whether BLM violated the prioritization requirement; and (3) whether vacatur of the sold leases offers an appropriate remedy for any alleged violations. *Mont. Wildlife Fed'n*, 127 F.4th at 42–46, 50–52. The Ninth Circuit's decision necessarily streamlined the process upon which the Court may determine the merits of Plaintiffs' claims.

Remand would leave the Phase Three leases in effect without having considered the merits of Plaintiffs' claims. The court in *Chlorine Chemistry Council v. EPA*, denied voluntary remand without vacatur where remand would have left the challenged agency regulation in effect while ignoring the merits of plaintiffs' claims. 206 F.3d 1286, 1288 (D.C. Cir. 200). The Court agrees with this approach.

11

Plaintiffs allege that the leases could threaten their interests in conserving greater sage-grouse. (Doc. 471 at 26.) Plaintiffs also allege that greater sage-grouse populations have declined "by 13-24% since 2013 across Wyoming and Montana." (*Id.*) Plaintiffs contend that oil and gas development of the Phase Three leases would further reduce greater sage-grouse populations. (*Id.*) "The need for finality in this matter clearly outweighs the government's justification[s] for requesting a voluntary remand." *Keltner*, 148 Fed. Cl. at 565. Remand would fail to serve "the public interest of allowing the agency to act more swiftly, given that the litigation in this case has come to its close." *Western Org. of Res. Councils*, 2022 WL 3082475, at *4; *see also Rock Creek All. v. U.S. Fish & Wildlife Serv.*, No. CV 01-152-M-DWM (D. Mont. Mar. 19, 2002) (rejecting request by agency to leave biological opinion in effect during remand to "re-work" it).

## CONCLUSION

The Court denies Federal Defendants' motion for voluntary remand. (Doc. 452.) Federal Defendants have not filed the motion for remand to avoid judicial review. *Western Org. of Res. Councils*, 2022 WL 3082475 at *4. The motion to remand proves prejudicial, however, to Plaintiffs and likely would not conserve judicial resources. *Id.*; *see also Keltner*, 148 Fed. Cl. at 565. Plaintiffs deserve final resolution of their claims.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that Federal Defendants' Motion to Remand (Doc. 451) is **DENIED**. The Court lifts the stay on summary judgment briefing. The Court directs the parties to meet and confer to present any proposed amendments to the deadlines for summary judgment briefing outlined in the Court's scheduling order. (Doc. 447.)

DATED this 17th day of December, 2025.

_____
Brian Morris, Chief District Judge
United States District Court